James Edward COLLINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 36447.

Court of Criminal Appeals of Texas.

Feb. 19, 1964.

Rehearing Denied March 25, 1964.

Rex Emerson, Houston (On Appeal Only), for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Theodore P. Busch, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is felony theft; the punishment, enhanced by two previous convictions for felony theft, life.

The indictment alleged the theft of an automobile of the value of over $50 belonging to William Womack.

William Womack testified that he was the owner of a 1963 Ford automobile, 1962 Texas License VE 9598; a white Tudor Galaxie 500 Ford. The automobile disappeared from its carport at the apartment house where he lived during the evening and before 9:30 P.M. on January 29, 1963. He gave neither the appellant nor anyone else permission to take it. The automobile was recovered and returned to him by the police. The points and coil were replaced. The license plates were not changed.

Edward A. Garecki, another resident of the apartment house, testified that he saw three men open the hood of a 1963 Ford at the apartment house carports. This was a little after 7 P.M. on January 29, 1963. One of the men drove the 1963 Ford away.

The other two left in a 1954 Ford Convertible. He pursued the latter for some distance without losing sight of it. During this chase the Ford Convertible ran a stop light and started to enter the La Porte Freeway headed in the wrong direction. It was brought to a stop after he blocked its way and he stayed there until officers arrived.

Patrolman Keith W. Bannon described the Convertible as a 1954 red with white top Ford Convertible, license number SP 6364. It had been abandoned when he arrived. He found three Oklahoma 1962 license plates in the trunk and automobile registration certificates, certificates of title and excise slips from the State of Oklahoma in the glove compartment.

Police Officer E. A. Schultea testified that on January 21, 1963, he saw the appellant driving a 1953 or 1954 Red Ford Convertible with a white top, License No. SP 6364. (That was some 8 days before Womack's car was taken.) Appellant's brother, Bobby Collins, was a passenger in the car.

Officer J. B. Bradley, who investigated the abandoned 1954 convertible, testified that after determining its ownership he talked to Bobby Collins and as a result of such conversation he found the stolen 1963 Ford, License VE 9598.

Police officers took latent fingerprints from the door of the stolen car. Officer H. H. Foster, fingerprint classifier for the Houston Police Department, compared and found one to be identical with the left thumb print and another with the left little finger print of Harry Arnold Langham.

The appellant's confession made to Detective W. G. Sanders was introduced in evidence which reads in part:

"On Tuesday, January 29, 1963, I went to the Longshoremans Hall at 7800 Harrisburg, looking for work. I guess this was about 5:30 a. m. My brother Bobby Collins was with me. Bobby and I went inside the hall and was standing there and Harry

Arnold Langham walked up to me and asked me if I remembered him. I told him yes. We couldn't get any work so I took Langham to my folks' house to get him something to eat. While we were at my folks' house Langham told me that he had some stuff he needed to pick up in Galveston. Bobby and I took Langham to Galveston and picked up his clothes and then brought Langham back to Houston.

"We got back to Houston and went to the Pick Up Ice House on Lyons where we played pool until about 6:00 p. m. that night. While we were there Langham got to talking to a heavy set guy about some cars. After Langham finished talking to this man he walked over to me and told me that this man had told him that he would give him some money for a 1963 Ford and one of the blank titles. We got to talking about this deal and decided to let Bobby drive the car away because he had never been in trouble before. We left the Ice House and drove over to some apartments off of the La Porte Freeway to see a friend of Bobby's about work, and that's when we spotted a 1963 Ford parked in the driveway. We were parked about a hundred feet from the 1963 Ford in my 1954 Ford convertible. We got out and Bobby walked over to the 1963 Ford and got into the driver's seat and I went around to the front of the Ford and opened the hood and started the motor with an short piece of wire, during this time Langham was standing beside me looking on. After the motor started I closed the hood and Bobby drove off in the 1963 Ford, to take it to a school house on Sheldon Road where we were going to meet him and the man who was going to pay us for the car.

"Langham and—(I)—then walked back to my car and got in it and started to drive off when we noticed another man get into his car. I drove around a few blocks and decided that this other man was following us so we got scared and tried to lose him, but when I got on the freeway my car went dead and we had to jump out of the car and had to leave on foot."

The appellant did not testify and no witnesses were called in his behalf.

The prior convictions alleged in the indictment were established in the manner approved by this Court in Mackie v. State, Tex.Cr.App., 367 S.W.2d 697; Reyes v. State, Tex.Cr.App., 363 S.W.2d 450; and Roberts v. State, 164 Tex.Cr.R. 537, 301 S.W.2d 154.

While Deputy District Clerk Lawrence was testifying regarding the records of such convictions, he was asked on cross-examination whether a writ of habeas corpus issued from any court subsequent to the judgment would be indicated in the records of the Criminal District Court. Appellant's first claim of error is directed to the court's remark after the state's objection had been sustained and appellant's counsel was about to rephrase the question—"Any habeas corpus—if there's no appeal taken from this judgment, that suffices the allegation."

Appellant excepted to the court's statement and the trial judge instructed the jury not to consider it for any purpose.

■ We find nothing in the court's remark which was a benefit to the state or injurious to the appellant. To constitute reversible error the comment of the court in violation of Art. 707, C.C.P must be such that it is reasonably calculated to prejudice the defendant's rights. Huckert v. State, 159 Tex.Cr.R. 368, 264 S.W.2d 121; Adams v. State, 165 Tex.Cr.R. 523, 309 S. W.2d 245.

Appellant's second complaint relates to the state's proof to sustain the allegation of the indictment that the 1963 Ford was of the value of over $50.

■ The owner testified that its value was "about $3,000.00" * * * "around $3,000.00," and upon inquiry by the court he testified: "The Court: Do you know the value, the approximate value of it? "A. (By Witness) Yes, sir. $3,000.00."

The appellant complains that he was damaged materially by the court taking a hand to prove the value, as well as by the admission of the evidence.

The witness testified that he had owned the 1963 Ford Galaxie about two and a half months; that he paid $3,000.00 for it— "plus or minus $50."; that he had approximately 4000 miles on it; that it was in good condition and it had not varied materially from the time he purchased it.

The state's burden being only to prove that the automobile was of the value of $50 or more, we overrule the contention that the appellant was damaged materially by the court's action and ruling on the evidence mentioned.

■ Appellant's third complaint is addressed to the interrogation of Police Officer J. C. Bankston when he was asked whether he had occasion to participate in the investigation of a "stolen 1963 Ford Galaxie coach, license number VE 9598."

The objection, which was overruled, was to the use of the word "stolen".

At the time Officer Bankston was being interrogated it had been shown by the evidence that the automobile referred to in the question had been taken and had been recovered with the coil burned up. Officer Bankston was the criminal investigator called by other officers to look over the car for fingerprints.

If there was error in the use of the word "stolen" the record shows that it was not harmful to the appellant.

■ The remaining ground for reversal relates to the admission of the testimony of Patrolman Bannon that he recovered three license plates in the trunk of the 1954 Ford and blank registration certificates, certificates of title and excise slips from the State of Oklahoma, in the glove compartment of said 1954 Ford.

We see no error in the admission of this evidence obtained in a search of the abandoned car which the appellant had been seen driving.

It is well established that when the state proves that a crime has been committed, the identity of the defendant may rest alone upon his confession. Smith v. State, 172 Tex.Cr.R. 554, 361 S.W.2d 390, and cases cited.

The court, in his charge, instructed the jury on the law of principals.

There are no formal bills of exception or bills relating to the court's charge.

The evidence is sufficient to sustain the conviction of the appellant as a principal in the theft of the automobile and to sustain the life sentence adjudged and pronounced upon the jury's verdict finding the defendant guilty and that he was the same person twice previously convicted of felonies less than capital.

The judgment is affirmed.