

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00016-CR

BOBBY DON MUMPHREY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 44985-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

Bobby Don Mumphrey was convicted by a Gregg County jury of driving while intoxicated (DWI), third or more. During the punishment phase of the trial, the State introduced three of Mumphrey's prior convictions, including one for criminally negligent homicide, a charge to which he pled guilty after the State dismissed an indictment for intoxication manslaughter. The jury assessed Mumphrey's punishment at twenty years' imprisonment and a fine of $10,000.00, and the trial court sentenced Mumphrey accordingly.

On appeal, Mumphrey argues that he was denied due process of law because the trial judge was the prosecuting attorney on his previously dismissed indictment for intoxication manslaughter.[1]

We overrule Mumphrey's points of error and affirm the trial court's judgment.

## I.    Factual and Procedural Background

Trooper Quinton Rose stopped Mumphrey for failing to dim his headlights and for having a defective license plate light. *See* TEX. TRANSP. CODE ANN. §§ 547.322(f), 547.333(c)(1) (West 2011). Mumphrey smelled of alcohol, so Rose had him perform field sobriety tests. When he failed the tests, Mumphrey was arrested on suspicion of DWI. Subsequent blood tests showed Mumphrey's blood-alcohol content was 0.208%, almost triple the legal limit. Because he had two prior convictions for DWI, he was charged with DWI, third or more, a third degree felony. After a jury trial, he was found guilty.

---

[1]In three points of error, Mumphrey argues that this violation of due process was both fundamental and structural.

2

During the punishment phase of the trial, the State introduced, and Mumphrey pled true to, Mumphrey's prior conviction for a burglary charge that enhanced the punishment range to between two and twenty years in prison. As a part of its case on punishment, the State also introduced and proved through certified copies and thumbprint evidence, a prior conviction for criminally negligent homicide. That conviction stemmed from an incident in which Mumphrey killed two female pedestrians by driving a vehicle in a negligent manner, by failing to keep a proper lookout, or by driving on an improved shoulder. As a part of a plea bargain, Mumphrey pled guilty to the criminally negligent homicide charge and received a sentence of eighteen months in state jail.

The State, without objection, offered testimony that the negligent homicide charge had originally been intoxication manslaughter, which carried a punishment range of twenty-five to ninety-nine years or life, but that, as a part of a plea bargain, it was dismissed and re-indicted as criminally negligent homicide, a state jail felony that carried a maximum punishment of only two years. Mumphrey testified that the intoxication manslaughter case was dismissed and that the judge presiding over the present case, the Honorable Alphonso Charles, was the prosecuting attorney in that case.

During the trial on punishment, three witnesses testified on Mumphrey's behalf, and against the advice of his attorney, Mumphrey also testified on his own behalf. He admitted to being guilty of the burglary and possession crimes, but he denied being guilty of criminally negligent homicide, asserting that he was pressured to plead guilty in that case. The State questioned Mumphrey about the facts of the offense, including the speed and condition of his car and the volume of alcohol he had consumed that night. Mumphrey specifically denied striking and killing the women, arguing that he had drunk one beer that night, that his vehicle was not

3

severely dented, and that a different vehicle hit the women. He claimed that, as a result of the collision, one of the bodies was thrown onto his car. He argued that he had been framed for the offense, and when the State asked whether he knew that one of the women's dismembered arms was found in his car, he claimed, "It was put inside my car."

The jury found the enhancement allegation to be true, assessed the maximum punishment of twenty years in prison, and assessed a fine of $10,000.00; the trial court then dismissed the jury and sentenced Mumphrey as per the jury's assessment. Mumphrey filed this appeal, arguing that the trial court was biased against him and that, by presiding over his case, the trial court committed fundamental error by denying him due process of law.

## II. There Was No Violation of Mumphrey's Right to Due Process

Mumphrey argues that there was a likelihood of bias because the trial judge was the prosecuting attorney at the time he was charged with intoxication manslaughter.

As a general rule, in order to preserve a complaint for review on appeal, the claimed error must have been presented in the trial court, thereby providing the trial court the opportunity to correct any error during the course of the trial. *See* TEX. R. APP. P. 33.1(a). Mumphrey did not move to recuse the trial court at any time and failed to raise this issue in a motion for new trial. However, errors, such as the claims of bias Mumphrey argues here, that are fundamental or structural in nature may be raised for the first time on appeal. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *Blue v. State*, 41 S.W.3d 129, 136–37 (Tex. Crim. App. 2000) (plurality op.). Because Mumphrey contends that the error in this case is fundamental or structural, we must examine the merits of his argument in

4

order to determine whether there was error and whether that error amounted to a fundamental or structural failure. *See Mendez*, 138 S.W.3d at 341; *Blue*, 41 S.W.3d at 136–37.

After the jury's punishment determination was announced and accepted, the trial court dismissed the jury. The court then sentenced Mumphrey in accordance with the jury's assessment, but the court went on to make a final statement:

> THE COURT: . . . . Mr. Mumphrey, I rarely say anything more than this to a defendant who's been convicted. But I was the prosecutor, until I became a judge, on that other case.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I know full well what the facts are.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I know that you were basically and should have been found guilty of intoxication manslaughter.
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do not argue with me now.
> Mr. Mumphrey, you are a lucky man. You are very lucky that this jury didn't get to put your punishment from 25 to 99 years or life. I think you know how angry this jury is with you.
> Based on your testimony, based on your record, the safest place for Gregg County citizens to be with you right now is for you to be in prison.

Mumphrey argues that the judge's comments regarding the intoxication manslaughter case show that, because the judge represented the State in the intoxication manslaughter case, he could not be impartial in presiding over this case, thereby violating his fundamental and structural rights.

In support of his argument, Mumphrey relies on *Williams v. Pennsylvania*, where a Pennsylvania Supreme Court justice, who as district attorney had given approval to seek the death penalty against Williams, subsequently denied Williams' motion to recuse him and, instead,

5

participated in a decision to reinstate Williams' death sentence after a stay of execution had been granted due to *Brady*[2] violations. *Williams v. Pennsylvania*, 136 S.Ct. 1899, 1903 (2016). The United States Supreme Court found that the judge's unconstitutional failure to recuse himself from the same case in which he "had significant, personal involvement as a prosecutor" violated Williams' right to due process of law and constituted structural error. *Id.* at 1910.

We find the holding of *Williams* inapplicable here. Unlike *Williams*, Mumphrey never moved to recuse the trial judge even though he was aware of the judge's prior participation as prosecuting attorney in the negligent homicide case. *See id.* at 1903–05. The judge in *Williams* had "significant, personal involvement" as both judge and prosecutor in the *same* case, whereas the judge here had no prior involvement whatsoever in this DWI case and was only the prosecutor in a case introduced on the question of punishment. *See id.* at 1910. Furthermore, the Supreme Court noted that the judge at issue in *Williams* was clearly disqualified under the Pennsylvania Code of Judicial Conduct. In direct contrast, under Texas law, a trial judge is not disqualified merely because he previously represented the State in a prior case against the defendant, and the same is true even if the conviction in which the trial judge participated as prosecutor is later used for punishment purposes. *See Brown v. State*, 108 S.W.3d 904, 907–08 (Tex. App.—Texarkana 2003, pet. ref'd).

More significantly, in this case, the jury decided the issues of guilt/innocence and punishment, not the trial court, whereas the Pennsylvania Supreme Court justice in *Williams* made the final decision on whether to seek the death penalty. Finally, *Williams* was a death penalty case

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

and, as the Supreme Court has held, "[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long[, and] . . . [b]ecause of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific cause." *Woodson v. N. Carolina*, 428 U.S. 280, 305 (1976). Based on the foregoing, we find the facts of *Williams* distinguishable from those of the present case and the holding of *Williams* inapplicable.

After examining the record, we find no clear showing of bias. Here, Mumphrey pled true to the enhancement allegation on punishment, the jury assessed Mumphrey's sentence, and the trial judge merely sentenced him in accordance with the jury's decision. The comments came after the jury's determination of punishment and after the jury was dismissed. Given that the jury gave him the maximum sentence in this case, the trial court simply reminded Mumphrey how lucky he was not to have faced the higher punishment range of twenty-five to ninety-nine years or life, which the jury could have considered had Mumphrey's record showed a conviction for intoxication manslaughter instead of the state jail felony of criminally negligent homicide. Though the comments could be loosely interpreted as lamenting the fact that a greater sentence could not be imposed, we will not assume the worst and presume error when there are two possible interpretations that can be given to the utterances of a trial judge. *State v. Ross*, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000); *see Earley v. State*, 855 S.W.2d 260, 262–63 (Tex. App.—Corpus Christi 1993, pet. dism'd) (trial judge could be disqualified for wishing higher sentence could be imposed). Therefore, having found no error, we overrule Mumphrey's points of error.

7

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    October 6, 2016
Date Decided:     December 28, 2016

Publish

8