

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1100-15

**ABRAHAM JACOB PROENZA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### CAMERON COUNTY

KEASLER, J., delivered the opinion of the Court, in which HERVEY, ALCALA, RICHARDSON, NEWELL, and WALKER, JJ., joined. NEWELL, J., filed a concurring opinion, in which HERVEY and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion, in which YEARY and KEEL, JJ., joined.

## O P I N I O N

Abraham Proenza did not object when his trial judge began asking pointed, substantive questions of a witness bearing crucial defensive testimony. Is Proenza now barred from complaining of this error for the first time on appeal? Because the trial judge had an independent duty to refrain from conveying to the jury her opinion of the case, we

hold that Proenza was under no obligation to object mid-trial. We affirm in part and will remand.

## I. FACTS AND PROCEDURAL POSTURE

On the evening of August 11, 2008, Abraham Proenza walked into the bedroom of four-month-old baby boy AJV and noticed that he was blue and purple in color, apparently struggling to breathe. Although Proenza administered emergency medical care to AJV and promptly contacted 911, AJV died later that night. Proenza, who was neither AJV's biological nor adoptive father, admitted to police that he had noticed AJV vomiting several times in the weeks, days, and even hours leading up to his death. An autopsy revealed that AJV was severely malnourished and dehydrated at the time of his death.

A grand jury ultimately indicted Proenza for Injury to a Child, alleging that he intentionally and knowingly caused serious bodily injury to AJV by, among other things, failing to seek prompt medical care for AJV. Proenza would maintain at trial that he lacked the requisite intent to harm AJV because of his genuine, though perhaps mistaken, belief that he could not obtain medical care for AJV without some documentary proof that he was AJV's legal guardian. This belief was apparently based on a previous occurrence in which Proenza's father-in-law brought a granddaughter to a medical clinic but was turned away due to the father-in-law's inability to produce this very kind of documentation. The clinic at which this incident occurred, *Su Clinica*, happened also to be the location of one of AJV's pediatricians, Dr. Carol Grannum.

## A.  At Trial

The State called Dr. Grannum to testify to her prior treatment of AJV, as well as *Su Clinica*'s supposed requirement that a child be accompanied by a documented legal guardian in order to receive care.  At one point, Dr. Grannum responded to a hypothetical situation posited by the defense wherein "somebody . . . tries to take the child [to *Su Clinica* for medical care] that's not the parent and has no documentation as a guardian," by stating that in those circumstances, medical staff at the clinic "can't see the patient."  She later clarified, however, that if a patient were in "acute distress," the patient would be stabilized on-site and someone from the clinic would call for EMS to take him or her to an emergency room.

After both parties had completed their questioning of Dr. Grannum and asked that she be excused, the trial judge interjected by directly asking Dr. Grannum for further details regarding the day-to-day enforcement of *Su Clinica*'s policy.  Proenza did not object to this initial exchange between the trial judge and Dr. Grannum, instead opting to "clarify" the testimony brought out by the judge by further examining the witness.  But this only prompted the judge to interject yet again, this time expressing skepticism that *Su Clinica*'s policy was enforced as stringently as defense counsel's follow-up questions suggested.  In the course of this judicial witness examination, the trial judge informed Dr. Grannum, in the presence of the jury, that her own doctor allowed the judge's children to be accompanied by relatives without any sort of authorizing note.[1]

---

[1]  *See* Appendix.

As to the entirety of this exchange between the trial judge and Dr. Grannum, the State concedes, and we agree, that "[t]he court's tone is fairly characterized as disapproval of the wisdom of such a practice and/or doubt that the policy is enforced as strictly as suggested by [Dr.] Grannum."[2]  Although the exchange was rather lengthy, Proenza did not lodge an objection before the trial judge that he considered her comments to be prejudicial.  At the conclusion of the case, the jury found Proenza guilty and assessed his sentence at forty years' imprisonment.

**B. On Appeal**

Proenza complained before the Thirteenth Court of Appeals that "[t]he trial judge improperly commented on the weight of the evidence" when she engaged with Dr. Grannum. Observing that "[b]y statute, the trial court may not comment on the weight of the evidence or convey an opinion of the case in the jury's presence at any stage of trial," Proenza cited to Texas Code of Criminal Procedure Article 38.05 and this Court's plurality opinion in *Blue v. State* as the dual bases for his relief.[3]  Proenza did not brief or otherwise address the preservation-of-error issue.

Nevertheless, the court of appeals characterized Proenza's argument as a claim "that fundamental error occurred" when the trial judge examined Dr. Grannum "such that . . .

---

[2]  State's Petition for Discretionary Review at 6.

[3]  Appellant's Brief at 27 (citing TEX. CODE CRIM. PROC. art. 38.05; *Blue v. State*, 41 S.W.3d 129, 134 (Tex. Crim. App. 2000)).

[Proenza] could complain . . . for the first time on appeal."[4] After considering our recent decision in *Unkart v. State*[5] and one of the concurring opinions in *Blue*, the court of appeals "concluded that a defendant may complain for the first time on appeal about a trial court's lack of impartiality" under the rubric of fundamental error "so long as the trial judge's conduct is so egregious as to deem the judge biased on the matter[.]"[6] Looking to the substance of what the trial judge said in Proenza's case, the court held that fundamental error of this kind had indeed occurred, thereby rendering a trial-level objection to the comments unnecessary to preserve complaint on appeal.[7] The court went on to review Proenza's claim for constitutional harm, found that it could not say "beyond a reasonable doubt that the trial court's error did not contribute to Proenza's conviction," and reversed.[8]

### C. Petition for Discretionary Review

The State raises three grounds in its petition for discretionary review:

1.   Is there a common-law "fundamental error" exception to preservation that exists outside of the framework of *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)?

---

[4] *Proenza v. State*, 471 S.W.3d 35, 47–48 (Tex. App.—Corpus Christi 2015, pet. granted); *see also Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement on appeal. . . . Ordinarily, a court of appeals should review preservation of error on its own motion[.]") (citations omitted).

[5] 400 S.W.3d 94 (Tex. Crim. App. 2013).

[6] *Proenza*, 471 S.W.3d at 51 (internal quotation marks and citations omitted).

[7] *Id.* at 54.

[8] *Id.* at 54–55 (citing TEX. R. APP. P. 44.2(a)).

2.    Is a complaint about a judge's comment on the evidence forfeited if not raised at trial?

3.    The trial judge's exchange with a witness neither tainted the defendant's presumption of innocence nor vitiated the jury's impartiality, and it was harmless under any standard.[9]

After a brief discussion of the law applicable to improper judicial commentary and procedural default, we will address each of the State's grounds for review in turn.

## II.  THE LAW

### A.  Judicial Comments

Article 38.05 of the Texas Code of Criminal Procedure prohibits the trial judge from commenting on the weight of the evidence in criminal proceedings or otherwise divulging to the jury her opinion of the case:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.[10]

Although Article 38.05 has been a fixture in our statutes for many years, this Court has had relatively few occasions, especially in the modern era, to discuss its meaning or application.[11] To the extent that we have, we have fairly consistently stated that "[t]o constitute reversible

---

[9]  State's Petition for Discretionary Review at 3.

[10]  TEX. CODE CRIM. PROC. art. 38.05.

[11]  *But see Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003) (discussing TEX. CODE CRIM. PROC. art. 36.14, which similarly prohibits the trial judge from "expressing any opinion as to the weight of the evidence" in its jury charge).

error [under] Article 38.05 . . . the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights."[12] If raised as a freestanding statutory complaint, error under Article 38.05 is subject to non-constitutional harm analysis.[13]

Of course, neither determining whether a particular comment violates Article 38.05 nor assessing the severity of harm, if any, flowing from an improper comment answers the question whether an appellate claim concerning the comment was properly preserved in the first place. Indeed, we have previously stressed the importance of keeping questions of preservation and harm distinct from one another.[14] Understanding how our procedural-default jurisprudence applies to Article 38.05 claims thus requires us to look to our "watershed decision in the law of error-preservation,"[15] *Marin v. State*.[16]

### B. Procedural Default in this Context: *Marin*, *Blue*, and *Unkart*

In *Marin*, we described the Texas criminal adjudicatory system as containing error-

---

[12] *McClory v. State*, 510 S.W.2d 932, 934 (Tex. Crim. App. 1974) (citing *Howard v. State*, 420 S.W.2d 706 (Tex. Crim. App. 1967); *Collins v. State*, 376 S.W.2d 354 (Tex. Crim. App. 1964)).

[13] *See Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005) ("In summary, when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis[.]").

[14] *See, e.g.*, *Mendez v. State*, 138 S.W.3d 334, 339 (Tex. Crim. App. 2004) ("In the opinion below and in the *Williams* case that it cited, the courts of appeals have mixed the concept of 'systemic requirement,' which has to do with preservation of error, with the concept of 'structural error,' which has to do with harmfulness of error.") (citations omitted).

[15] *See Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002).

[16] 851 S.W.2d 275 (1993).

preservation "rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request."[17] We have since referred to these separate classifications as category-one, -two, and -three *Marin* rights, respectively. We explained that procedural default—that is, "the loss of a claim or right for failure to insist upon it by objection"—"only applies to the last category," since these rights are typically considered to be "optional with the litigants."[18] On the other hand, category-two rights, because they are "so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection," are only abandoned on appeal when the record reflects that they have been "plainly, freely, and intelligently" waived at trial.[19] And category-one rights, being "systemic" and therefore "essentially independent of the litigants' wishes" can neither be forfeited nor even validly waived by the parties for appellate-review purposes.[20] Utilizing this categorical framework has been immensely helpful in clarifying our procedural-default caselaw, since "[d]etermining which category a right occupies will usually settle the question of procedural default in the context of a particular case."[21]

However, deciding the procedural-default status of claims of improper judicial

---

[17] *Id.* at 279.

[18] *Id.*

[19] *Id.* at 279–80.

[20] *Id.* at 279.

[21] *Id.*

comments has presented a unique challenge for this Court. In *Blue v. State*, for example, the trial judge made a number of inappropriate comments to a venire of potential jurors, including that he "prefer[red] the defendant to plead [guilty]" rather than assert his right to a jury trial.[22] Although the appellant "did not object to any" of the trial judge's statements in that case, he "asserted that when a trial judge makes a fundamentally erroneous statement, no objection is required" to present such a claim on appeal.[23] Albeit for varying reasons, a fractured majority of this Court agreed.[24]

A four-judge plurality cited to then-Rule 103(d) of the Texas Rules of Evidence in support of the proposition that "we are authorized to 'tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court.'"[25] Finding that "[t]he comments of the trial judge . . . tainted appellant's presumption of innocence in front of the venire," the plurality determined that "fundamental error of constitutional dimension" had occurred, such that "appellant's failure to object . . . did not waive error."[26] A concurring opinion would have based the analysis more upon *Marin*'s procedural-default framework in arriving at this conclusion, as opposed to the plurality's

---

[22] 41 S.W.3d 129, 130 (Tex. Crim. App. 2000) (plurality opinion).

[23] *Id*. at 131.

[24] *Id*. at 129–39.

[25] *Id*. at 131 (citing Tex. R. Evid. 103(d) (West 1998)).

[26] *Id*. at 132–33.

apparent reliance upon the Rules of Evidence.[27] The concurrence found that the improper comments were evidence that the defendant's right to an impartial judge—which the concurrence believed to be a category-one *Marin* absolute requirement—was violated.[28] Accordingly, although both the plurality and concurrence would have found that the improper-judicial-comments claim in *Blue* was not forfeited by the appellant's failure to object, they were unable to agree upon a justification for that common ground.

We later acknowledged this lack of agreement in *Unkart v. State*.[29] In *Unkart*, the trial judge made a number of comments in voir dire regarding the defendant's right not to testify that the defendant perceived as inappropriate.[30] The defendant did not contemporaneously object, but complained on appeal that the judge's voir dire "improperly commented on his right not to testify."[31] We observed that "[o]rdinarily, a complaint regarding an improper judicial comment must be preserved at trial," but noted that in *Blue*, "we granted relief on an improper-judicial-comment complaint that was not preserved at trial."[32] We declined to treat *Blue* as precedential on the issue of procedural default solely because the "rationales of the

---

[27] *Id.* at 135–36 (Keasler, J., concurring).

[28] *Id.* at 138–39.

[29] 400 S.W.3d 94 (Tex. Crim. App. 2013).

[30] *Id.* at 97–98.

[31] *Id.*

[32] *Id.* at 99.

plurality and concurring opinions" in *Blue* were "entirely disparate."[33]  But the *Blue* opinions were neither expressly overruled nor even cast into doubt—they could still "be considered for any persuasive value they might have."[34]  And indeed, we ultimately resolved *Unkart* via the merits determination that "the circumstances [in *Unkart*] differ[ed] significantly . . . from the circumstances in *Blue*."[35]

Our silence in *Unkart* on the issue of "fundamental error" may have been why the court of appeals in this case said that *Unkart* "left the door open for a judicial comment that can rise to the level of fundamental error."[36]  But even before *Unkart*, this Court had already rejected the idea that "fundamental error," as a freestanding doctrine of error-preservation, exists independently from *Marin*'s categorized approach.

## III.  ANALYSIS

**A.  There is no common-law "fundamental error" exception to the rules of error preservation established by *Marin*.**

In *Saldano v. State*, we noted that before *Marin* "this Court . . . recognized more than a dozen . . . kinds of fundamental error."[37]  We agreed with Professors Dix and Dawson that our pre-*Marin* error-preservation jurisprudence was regrettably little more than a series of

---

[33]  *Id.* at 101.

[34]  *Id.*

[35]  *Id.*

[36]  *Proenza*, 471 S.W.3d at 51.

[37]  70 S.W.3d 873, 887 (Tex. Crim. App. 2002).

"piecemeal developments," each with "somewhat different rationales."[38] As a consequence, questions of procedural default could not "be explained by any . . . unifying principle or principles."[39] This is why, in *Saldano*, we lauded *Marin* as "a watershed decision in the law of error-preservation"—because *Marin* "suggest[ed] . . . a framework" for a set of unifying procedural-default principles that was sorely needed.[40] In *Mendez v. State*, we later re-iterated *Marin*'s subsumption of any "fundamental error" doctrine when we said that "[q]uestions of 'fundamental error' now are considered in its framework."[41]

Although this precedent would seem to decide the issue before us, we note that the doctrine of "fundamental error" may be understood in one of two ways. The first formulation of the doctrine may be stated thusly: Some claims, by their very utterance and irrespective of the level of harm resulting therefrom, are of such a "fundamental" nature that they are worth reaching on appeal whether they were preserved at trial or not. But to say that an error is "fundamental" in this sense is functionally the same as saying that it is a *Marin* category-one or -two claim. It was in this sense that, in *Mendez*, we said that "[q]uestions of 'fundamental error' now are considered in [*Marin*'s] framework."[42] And as to this

---

[38] *Id.* (quoting 43 George E. Dix & Robert O. Dawson, *Texas Practice—Criminal Practice and Procedure* § 42.121 (2d ed. 1995)).

[39] *Id.*

[40] *Id.* at 888.

[41] *Mendez*, 138 S.W.3d at 341.

[42] *Id.*

formulation of the doctrine, we see no practical or legal basis for contradicting what we said in *Saldano* and *Mendez*; our reasoning regarding "fundamental error" in those cases remains as true today as it was when they were decided.

The second formulation, and the one apparently (if not explicitly) adopted by the court of appeals in this case, may be stated this way: Some claims are such that, while normally requiring a trial-level objection to preserve error, they are nevertheless reviewable without an objection when the harm resulting from the error is sufficiently "fundamentally" egregious. This formulation is aptly described as a "harm-based" theory of error preservation. Both the court of appeals, in its opinion,[43] and Proenza, in his brief on the merits before us,[44] cite to our opinion in *Jasper v. State*[45] in support of such a theory.

In *Jasper*, the appellant claimed that "his right to a fair trial by an impartial jury was violated by comments of the trial judge" when the judge "correct[ed] a misstatement . . . of previously admitted testimony" and expressed "irritation at the defense attorney" in so doing.[46] Although the appellant did not object at trial, we claimed that "it is the province of this Court to 'take notice of fundamental errors affecting substantial rights although they

---

[43] *See Proenza*, 471 S.W.3d at 52 (citing *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001)) ("A trial court's comments do not constitute fundamental error unless they rise to 'such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury.'").

[44] Respondent's Brief on the Merits at 29–30.

[45] 61 S.W.3d 413 (Tex. Crim. App. 2001).

[46] *Id*. at 420–21.

were not presented to the court.'"[47]  We cited what was, at that time, codified as Texas Rule of Evidence 103(d) in support of this claim, which read: "Nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court."[48]  This rule has since been re-codified as Texas Rule of Evidence 103(e), and now reads slightly differently: "In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved."[49]  Proenza, too, points to this rule as proof of the existence of a freestanding doctrine of "fundamental error."[50]

But reading Rule of Evidence 103(e)—and, by extension, *Jasper*—so as to divine a freestanding, harm-based doctrine of error preservation is contrary to the language and drafting history of the rule, as well as our own post-*Marin* caselaw.  Rule 103(e) is a "Rule of Evidence" by its very style.  It is located in a subheading that is titled "Rulings on Evidence."[51]  It is therefore inaccurate to cast Rule 103(e) as an exception to the rules of procedural default in situations where—as in this case, *Blue*, and *Jasper*—the perceived error did not arise from the trial judge "ruling to admit or exclude evidence."[52]

---

[47]  *Id.* (citing TEX. R. EVID. 103(d) (West 1998)).

[48]  TEX. R. EVID. 103(d) (West 1998).

[49]  TEX. R. EVID. 103(e).

[50]  *See* Respondent's Brief on the Merits at 30.

[51]  TEX. R. EVID. 103.

[52]  TEX. R. EVID. 103(a).

Even were we inclined to confine the Rule 103(e) "fundamental error" exception to evidentiary situations, we note that as originally drafted in 1986, "[Rule 103(d)] was intended to be purely declarative of prior law."[53] Rule 103(d), then, was meant only as an acknowledgment that certain patchwork rights had been accorded a "fundamental" status in our pre-*Marin* procedural-default body of law.[54] As previously stated, *Marin* subsumed this body of law and provided a framework under which it was to be applied going forward. Rather than existing in conflict with one another, Rule 103(e), *Jasper*, and *Marin* all stand for the same uncontroversial proposition: "Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system."[55] The "fundamental error[s]" described in Rule 103(e) and *Jasper* are simply category-one and -two *Marin* errors.

That *Marin* leaves no room for a harm-based doctrine of error-preservation is further bolstered by our subsequent caselaw on this subject. We have characterized *Marin* as holding "that the general preservation requirement's application turns on the nature of the

---

[53] 1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 103.7 (4th ed. 2016) (citing TEX. R. CRIM. EVID. 103(d) cmt. (West 1986)); *Miller v. State*, 939 S.W.2d 681, 687–89 (Tex. App.—El Paso 1996, no pet.).

[54] TEX. R. CRIM. EVID. 103(d) cmt. ("Adoption of this rule is not meant to change the Texas harmless error doctrine. In subsection (d) the federal rule refers to plain error. This has been changed to fundamental error which conforms to Texas practice. The Committee intends no change through 103(d) in present Texas law.") (West 1986).

[55] *Marin*, 851 S.W.2d at 278 (citing TEX. R. CRIM. EVID. 103(d)).

right allegedly infringed,"[56] as opposed to "the circumstances under which it was raised."[57]

That is, a proper determination of a claim's availability on appeal should not involve peering

behind the procedural-default curtain to look at the particular "circumstances" of the claim

within the case at hand. This is because "[d]etermining a threshold issue of procedure based

on the claim's merits results in an analytical hiccup[.]"[58] So we have said that even errors

that may be cured only by mistrial[59] and rights whose timely assertion lead only to dismissal[60]

may still be forfeited by failure to raise or urge them at trial. To adopt a model of error

preservation that incorporates a "harmfulness of error" standard would fly in the face of these

settled jurisprudential standards—and would, in addition, risk subverting the gate-keeping

intent underlying *Marin*.

Proenza cautions that doing away with the doctrine of "fundamental error" is

tantamount to a ruling that "no defendant in a situation such as the present case" would "ever

---

[56] *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014).

[57] *Ex parte Heilman*, 456 S.W.3d 159, 165–66 (Tex. Crim. App. 2015).

[58] *Ex parte Marascio*, 471 S.W.3d 832, 837 (Tex. Crim. App. 2015) (Keasler, J., concurring).

[59] *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (even "incurable erroneous jury argument[]" is error that is "forfeited by a failure to insist upon it").

[60] *See Heilman*, 456 S.W.3d at 166 ("It would be easy to misinterpret a statute-of-limitations defense as a uniquely fundamental right, given that when it is properly raised, it leads to only one result: dismissal. But its true nature—a mere legislative 'act of grace' —is modest, especially when compared to weightier, constitutionally based rights that we have nonetheless deemed forfeitable.").

be able to obtain relief without preserving error[,] no matter how egregious the error is."[61]

He is mistaken. In the first place, we have previously said that even "incurable" errors may sometimes be forfeited by the defendant's failure to object at trial.[62] Secondly, we do not repudiate the word "fundamental" as a descriptor of rights or errors in appellate claims; what we reject is the use of this term whenever it is used to connote a harm-based doctrine of error preservation. Once again, the question of error preservation turns not upon the "circumstances under which [an error] was raised," but upon the "nature" of the error itself.[63] We agree with the State that "[f]or the purpose of preservation . . . it should not matter that some comments are worse than others; that is purely a function of harm."[64]

Finally, and most importantly, our rejection of a freestanding doctrine of "fundamental error" does not mean that *Marin*'s classes of non-forfeitable claims—categories one and two—have somehow disappeared. To the contrary, our ruling today simply changes the operative question in determining whether a claim of improper judicial commentary is subject to procedural default. Instead of the operative question being whether, in a particular

---

[61] Respondent's Brief on the Merits at 27.

[62] *See, e.g.*, *Cockrell*, 933 S.W.2d at 89 (even "incurable erroneous jury arguments" is error that is "forfeited by a failure to insist upon it" at trial).

[63] *See Heilman*, 456 S.W.3d 159, 165–66 (Tex. Crim. App. 2015) ("When we analyze rights under our *Marin* framework, we focus on the nature of the right at issue—not the circumstances under which it was raised.").

[64] State's Petition for Discretionary Review at 9 (citing *Easley v. State*, 424 S.W.3d 535, 538-39 (Tex. Crim. App. 2014)).

case, a trial judge's comments rise to the level of "fundamental error," the operative question is now whether, in the Texas adversarial system as a whole, claims of error under Article 38.05 fall within *Marin*'s third class of forfeitable events.

**B. Under *Marin*'s framework, a trial judge's improper comment on the evidence is not forfeited by mere inaction at trial.**

*Marin* places particular emphasis on the various respective "dut[ies]" faced by trial judges and litigants in our adversarial adjudicatory system.[65] "The trial judge has no duty to exclude," for instance, hearsay evidence absent a partisan objection "and would probably fall into error if he did."[66] Neither does the trial judge have an "independent duty . . . to shuffle the [venire] panel or to excuse [a] veniremember" subjected to peremptory challenge.[67] Indeed, "[t]he trial judge as institutional representative has no duty to enforce" any forfeitable right "unless requested to do so."[68] In this sense, the responsibility of asserting forfeitable rights belongs to the litigants, and not the trial judge. This is why such rights will be unavailable on appeal if not urged at trial. A court of appeals should not find error in a trial judge's inaction when contemporaneous action is neither requested nor independently required of her.

By the same token, however, a litigant "need make no request at trial for the

---

[65] *Marin*, 851 S.W.2d at 278–80.

[66] *Id.* at 278.

[67] *Id.*

[68] *Id.*

implementation of" waiver-only rights precisely because "the [trial] judge has an independent duty to implement them absent an effective waiver."[69] When it comes to non-forfeitable rights, the legal responsibility of assuring compliance with these rights falls squarely upon the trial judge. And when these kinds of rights are at stake, a court of appeals may rightly find error in a trial judge's conduct, even when the parties do not complain at trial, because the law imposes upon the judge a duty that exists independently of the parties' decision to speak up. As we would later unanimously say in *Mendez v. State*: "A law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only. It cannot be a law that is forfeitable by a party's inaction. This was the precise holding of *Marin*."[70] In accordance with *Mendez*, the question of whether Article 38.05 is a category-three forfeitable right under *Marin* turns upon whether the trial judge has an independent duty to ensure compliance with Article 38.05, or whether compliance need be given only upon partisan request.[71]

---

[69] *Id.* at 280.

[70] 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

[71] *See also, e.g.*, *Grado*, 445 S.W.3d at 741 (Tex. Crim. App. 2014) ("In the absence of [an] effective waiver, a judge has an independent duty . . . to identify the correct statute under which a defendant is to be sentenced[.]"); *Garcia v. State*, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004) ("[I]f the judge is aware of the defendant's language barrier, the judge has an independent duty to ensure that the proceedings are interpreted for the defendant[.]"); *Blue*, 41 S.W.3d at 131 (plurality opinion) (quoting *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)) ("The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial."). *Cf. Sanchez v. State*, 120 S.W.3d 359, 364 (Tex. Crim. App. 2003) ("[T]he appellant had an affirmative duty to object to any defect in the indictment before trial, and a failure to do so would prevent him from raising a claim of a defect for the first time on appeal.").

We note initially that the statute itself is written in mandatory terms: "the judge shall not discuss or comment upon the weight of the [evidence] . . . nor shall he . . . make any remark calculated to convey to the jury his opinion of the case."[72]  While we have previously said that a statute being "couched in mandatory terms . . . does not necessarily mean that the statute identifies an absolute prohibition or a waiver-only right,"[73] we note that the statute in this case is both (1) couched in mandatory terms and (2) directed  at the trial judge herself.  There is no ambiguity within the statute as to who bears the ultimate responsibility of compliance with this law—the language of the statute speaks for itself in placing this responsibility squarely upon the judge.[74]  The statute speaks neither of "a party's request"[75] nor the "motion of the defendant,"[76] but simply commands that the judge comply.  It would seem, then, that Article 38.05 by its very text creates "a duty on the trial court to act *sua sponte*"[77]—or rather, a duty to refrain *sua sponte* from a certain kind of action.  To this

---

[72]  TEX. CODE CRIM. PROC. art. 38.05.

[73]  *Trinidad v. State*, 312 S.W.3d 23, 29 (Tex. Crim. App. 2010).

[74]  *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("[I]f the meaning of the statutory text . . . should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.  Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.") (internal quotation marks and citations omitted).

[75]  *Cf., e.g.*, TEX. CODE CRIM. PROC. art. 39.14(b).

[76]  *Cf., e.g.*, TEX. CODE CRIM. PROC. art. 38.31(b).

[77]  *Mendez*, 138 S.W.3d at 342.

extent, we agree that this "cannot be a law that is forfeitable by . . . party[] inaction."[78]

To be sure, there is real utility in requiring a timely objection upon perceived error, including that the respective parties are not "burdened by appeal and retrial."[79] But *Marin* took special pains to describe procedural default rules that made sense "[i]n the context of the whole system."[80] Thus, the utility associated with enforcement of forfeiture rules never outweighs "fundamental systemic requirements or . . . rights so important that their implementation is mandatory absent an express waiver."[81] If a category of error by its very utterance tends to threaten the integrity of the criminal adjudicatory process itself, we may, consistent with *Marin*, deem it proper for appellate courts to at least consider the merits of these claims—even in the absence of a trial-level objection—and take corrective measures as appropriate.[82]

---

[78] *Id.*

[79] *Saldano*, 70 S.W.3d at 887.

[80] *Marin*, 851 S.W.2d at 280.

[81] *Id.*

[82] *See, e.g.*, *Grado*, 445 S.W.3d at 741 ("The . . . right to be sentenced by a . . . judge who properly considers the entire range of punishment is . . . necessary to effectuate the proper functioning of our criminal justice system. . . . [T]he right involved here speaks to a broader concern-the integrity of judicial sentencing proceedings."); *Ieppert v. State*, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995) ("The constitutional prohibition against *ex post facto* legislation [a category-one *Marin* right] is not really an individual right at all. It is a categorical prohibition directed by the people to their government."). *Cf. Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998) (quoting *Marin*, 851 S.W.2d at 278) (statute-of-limitations claim deemed forfeitable because such a claim "can hardly be deemed 'fundamental to the proper functioning of our adjudicatory system'").

In this exact fashion, we believe that compliance with Article 38.05 is "fundamental to the proper functioning of our adjudicatory system," such that it should "enjoy special protection" on par with other non-forfeitable rights.[83] *Marin*'s description of the adversarial system depends upon, or at the very least assumes, the decision-maker's impartiality. When a trial judge has no interest in the outcome, it is fair to assume that those rights the litigants want enforced, they will ask to be enforced. It behooves the litigants to urge their rights at trial precisely because they can trust the trial judge to fairly consider the claims and reach a ruling that is based in law. And when they do not so desire to urge their rights, it is sensible to assume that their "failure to speak up is quite enough."[84]

But when the trial judge's impartiality is the very thing that is brought into question, *Marin*'s typical justification for requiring contemporaneous objection loses some of its potency. When a litigant perceives a violation of Article 38.05, it is not a foregone conclusion that his silence indicates a relinquishment of his rights thereunder. Silence may just as fairly indicate a litigant's calculation that, if the trial judge is indeed partial to the opposing side in her evidentiary commentary, she will likewise display partiality in ruling upon the Article 38.05 objection itself. An objection under these circumstances would be futile at best, and at worst could reinforce to the jury that the trial judge stands solidly in the corner of the opponent. Article 38.05 violations therefore disrupt the delicate incentive

---

[83] *Marin*, 851 S.W.2d at 278.

[84] *Id.* at 280.

structure that, under *Marin*'s framework, is "so fundamental" to the proper functioning of our system.

This is to say nothing of the important role that Article 38.05 plays in protecting the perception of the trial judge's impartiality in front of the jury. We have previously stated that Articles 36.14[85] and 38.05 reflect a "devotion" within the Texas adversarial system to the proposition that "the judge is a neutral arbiter between the advocates."[86] When a litigant contends that the trial judge has shirked her duty by openly "convey[ing] to the jury [her] opinion of the case,"[87] the litigant has necessarily alleged that an alarming perversion of this role has taken place. And because we have said that "[j]urors are prone to seize with alacrity upon any conduct or language of the trial judge," we believe such an allegation to be sufficiently weighty as to merit appellate review even in the absence of a partisan objection at trial.[88] As we said in *Grado v. State*, "[a] contrary conclusion has the potential of shaking the public's perception of the fairness of our judicial system and breeding suspicion of the fairness and accuracy of judicial proceedings. The nature of this right is too significant to

---

[85] TEX. CODE CRIM. PROC. art. 36.14 ("[T]he judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.").

[86] *Brown*, 122 S.W.3d at 797–98.

[87] TEX. CODE CRIM. PROC. art. 38.05.

[88] *Id.* (quoting *Lagrone v. State*, 209 S.W. 411, 415 (Tex. Crim. App. 1919)).

the judicial system to conclude that it is extinguished by mere inaction."[89]

Of course, we do not hold today that every unscripted judicial comment in fact disrupts the proper functioning of the judicial system or weakens the public's faith in our trial judges.[90] This is because, as the dissent rightly points out, "[m]ost trial judges are hard-working and well-meaning[.]"[91] But we also believe that allegations of impropriety under Article 38.05 tend, as a whole, to implicate these concerns whether each individual claim has merit or not. Thus, if a judicial comment is found to be errorless or insignificant in the context of a particular trial, that is a good reason to conclude that any resulting claim of error should be denied on its merits or else declared harmless—it is not a good reason to say that the claim was never preserved in the first place. We do not, then, suggest that every claim brought under Article 38.05 is meritorious or even likely to be so; we speak only on the issue of preservation.

Nevertheless, the dissent fears that, by our holding today, "the Court . . . fashions a regime that will entangle the appellate courts in micromanaging the conduct of jury trials."[92] It concludes that "equity and policy favor giving trial judges the opportunity to address and

---

[89] 445 S.W.3d 736, 741 (Tex. Crim. App. 2014).

[90] *See* Concurring Opinion at 3 ("[N]ot every trial judge's comment that runs afoul of Article 38.05 can be said to completely wreck the proper functioning of the adjudicatory system.").

[91] Dissenting Opinion at 14.

[92] *Id*. at 2.

cure complaints about judicial comments,"[93] and observes by way of comparison that "allowing judicial comments on the evidence is a common-law tradition in federal court[.]"[94] But federal law has no statute explicitly prohibiting judicial commentary on the weight of evidence in front of the jury. Texas does.[95] We are bound by the will of the Legislature as expressed in its enactments—even when those enactments break from vaunted "common-law tradition[s]"[96] or the practices of other jurisdictions. And this deference to the Legislature ultimately cuts both ways. Should the Legislature agree that we have ranked Article 38.05 too highly in the pantheon of Texas trial rights, or that the rule announced today places too heavy a burden on the dockets of our appellate courts, it is certainly within the Legislature's authority to provide tailored guidelines about whether, when, and to what extent a litigant must object to preserve an appellate complaint under Article 38.05. Until then, *Mendez* provides the clearest answer to the question before us today: "A law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only."[97]

In light of the above, we hold today that claims of improper judicial comments raised under Article 38.05 are not within *Marin*'s third class of forfeitable rights. Rather, we believe that the right to be tried in a proceeding devoid of improper judicial commentary is

---

[93] *Id*. at 8.

[94] *Id*. at 6.

[95] *See* TEX. CODE CRIM. PROC. art. 38.05.

[96] Dissenting Opinion at 6.

[97] *Mendez*, 138 S.W.3d at 342.

at least a category-two, waiver-only right.[98] Because the record does not reflect that Proenza plainly, freely, and intelligently waived his right to his trial judge's compliance with Article 38.05, his statutory claim in this matter is not forfeited and may be urged for the first time on appeal. In this regard, the ruling of the court of appeals is affirmed.

## C. Was Proenza harmed?

We have previously said that "when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis."[99] Texas Rule of Appellate Procedure 44.2(b), the non-constitutional standard for reversible error in criminal cases, requires that "[a]ny other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."[100] In apparent recognition of this principle, Proenza, in his brief before the court of appeals, not only cited Article 38.05 in support of his claim but also called for non-constitutional harm review: "Having shown violations of Texas Code of Criminal Procedure 38.05, Appellant must now show a substantial right was affected as a result[.]"[101]

However, as the State rightly points out, both the majority and dissenting opinions

---

[98] *But see Garza v. State*, 435 S.W.3d 258, 263 (Tex. Crim. App. 2014) ("[T]his case does not require that we further define where in *Marin*'s categorical structure [this] claim is properly placed. We reserve such a decision for a matter that properly presents the issue.").

[99] *Gray*, 159 S.W.3d at 98.

[100] TEX. R. APP. P. 44.2(b).

[101] Appellant's Brief at 33.

below applied the standard of harm that is associated with constitutional error, despite Proenza's assertion of a bare statutory claim. Texas Rule of Appellate Procedure 44.2(a) states that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[102] The majority expressly applied, and cited to, this constitutional-error harm standard when it could not "say beyond a reasonable doubt that the trial court's error did not contribute to Proenza's conviction."[103]

In this, the court of appeals erred. Because Proenza claimed only statutory error and called for non-constitutional harm analysis, the court of appeals should have applied the harm analysis contained in Texas Rule of Appellate Procedure 44.2(b). This is not to say that the court of appeals's ultimate determination that Proenza was harmed was incorrect *per se*; but the court should have examined this issue under the correct standard. Rather than undertake this examination for the first time on discretionary review, we think it more appropriate for the court below to revisit its harm analysis, this time applying the proper standard under Rule 44.2(b).[104]

## IV. CONCLUSION

---

[102] TEX. R. APP. P. 44.2(a).

[103] *Proenza*, 471 S.W.3d at 54–55 (citing TEX. R. APP. P. 44.2(a)).

[104] *See, e.g.*, *Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex. Crim. App. 1999).

*Marin* described the trial judge as an "institutional referee;"[105] she is not, to continue the metaphor, just another player on the field. Knowing this, litigants in our system do not—and should not—expect the judge to stand in open opposition to their desired verdicts, as they should with their opponents. And the trial judge, for her part, should not need the litigants to remind her that hers is not the task "of producing the evidence [and] arguing its significance[.]"[106] She should know without being prompted that any divulgence to the jury of her opinion in the case would, if nothing else, make her seem "involved in the fray."[107] Our system's basic structure, then, simply does not contemplate that litigants should bear the duty to request Article 38.05 compliance before it will be given. As in *Marin*, we think it would be "dysfunctional" to interpret Article 38.05 so as "to foreclose review of [this] trial defect[] for which the litigants are not legally responsible."[108]

Although Proenza did not contemporaneously object to the trial judge's improper questioning of a witness, he was nevertheless entitled to appellate review of his claim that, in so doing, the judge violated Texas Code of Criminal Procedure Article 38.05. This is not because the trial judge's comments rose to the level of "fundamental error," but rather because claims brought under Article 38.05 are not, in *Marin*'s framework, subject to

---

[105] *Marin*, 851 S.W.2d at 278.

[106] *Brown*, 122 S.W.3d at 797.

[107] *Id.*

[108] *Marin*, 851 S.W.2d at 280.

forfeiture by inaction.  We remand this case to the court of appeals to apply the proper harm analysis on the merits of Proenza's claim.

Delivered: November 15, 2017

Publish

# APPENDIX

[PROSECUTOR]: Nothing further from this witness, may this witness be excused?

THE COURT: Ma'am, once the child is a registered patient of the clinic, what do you all require for documentation on follow-up visits?

THE WITNESS: Meaning if the patient needs to come back, we would give them a little note saying you [are] due back in a week or in two weeks or two months.

THE COURT: So in this case, you had given [AJV] a follow-up appointment.

THE WITNESS: Yes.

THE COURT: When he -- when [AJV] is presented for his return visit, what do you require if anything, for the child to be seen?

THE WITNESS: We would see the patient unless the patient wasn't brought in, I guess, by mom or dad, doesn't have a note saying that whoever is bringing the patient in.

THE COURT: But if he has a card, they just present it and go in to be seen?

THE WITNESS: He doesn't even need a card. You just have to present your name.

THE COURT: You just sign in on the front?

THE WITNESS: Yeah, and present your name.

THE COURT: And they pull the file and take him in.

THE WITNESS: And they pull the file and then they see which doctor can see them, and we see them.

THE COURT: So you don't go through paperwork each time you come to the clinic?

THE WITNESS: No, not if the patient has already been seen, and if that's the patient's medical home.

THE COURT: Okay.

[DEFENSE COUNSEL]: May I follow up, Judge, just to clarify?

THE COURT: Sure.

[DEFENSE COUNSEL]: Doctor, you said that only if they brought in the patient or a guardian with authorization, that's what you mean, even if it's a follow-up.

THE WITNESS: Right, but the patient has to be with a legal guardian or with the mom or dad.

[DEFENSE COUNSEL]: Because even though it's a follow-up, you are still not going to see -- well, we are talking about a minor child. You are not going to see the child unless the parent or guardian or someone with documentation authorized for you all to give treatment, correct?

THE WITNESS: Correct.

THE COURT: But do you actually ask those questions? Or do you just assume that's the parent that's bringing the child?

THE WITNESS: No, no, no, because a lot of times, patients come without a mom or a dad, and then the triage nurse would actually come up to us and say, Doctor Grannum, this patient doesn't have a mom or dad, you know, and I mean, they come and they ask us.

THE COURT: Is that on the first visit or in the follow up visit?

THE WITNESS: Even on a follow-up visit, even on a follow-up visit.

THE COURT: Okay. Tell me about that process.

THE WITNESS: I'm not sure exactly what the triage nurse asks, but if it's the patient comes into the front desk, if it's not mom and it's not dad and they don't have a paper with their name on it, and I guess they present an ID showing that this is who they say they are, usually we don't see the patient.

THE COURT: Okay. So, on the follow-up visits, they have to show documentation, that's just y'all's procedure?

THE WITNESS: Right. It has to be mom or dad, or there has to be a letter that the person brings in with his or her name on it authorized by mom or dad.

THE COURT: Oh, just any letter would do saying, hey . . . I give authority to [name] to take my child to the clinic?

THE WITNESS: Actually, we also have a form from our clinic that we give to mom and dad if they want to send the patient with somebody else. We actually have our own form.

THE COURT: Oh, okay. But as long as you have that form, they will see the child?

THE WITNESS: And it has to be in the chart.

THE COURT: And they ask for that each time, even though the child has already been cleared for treatment?

THE WITNESS: It's -- it's routine that if it's not mom and dad and if that person who is bringing the child in, if that name is not on the form, that person cannot bring the child in.

THE COURT: And is there any such form like that for [AJV] --

THE WITNESS: I can check.

THE COURT: -- that was filled in at the first visit?

THE WITNESS: I can check.

JUROR: May I ask a question?

THE COURT: You can't, I'm sorry. You may not, but if you will write it down, I'll consider it. Any objections to a juror asking a question or writing it down?

[DEFENSE COUNSEL]: As long as it's done the proper way, Judge, which is through the foreperson.

THE COURT: Well, they don't have a foreperson.

[DEFENSE COUNSEL]: Well, not yet, but that would be my suggestion.

THE COURT: And we need to wait until y'all are deliberating. Doctor, is that a clinic policy?

THE WITNESS: Yes.

THE COURT: And do you know what the purpose of that is?

THE WITNESS: No.

THE COURT: Because, I mean, you have already -- what kind of -- was the child on insurance, Medicare, Medicaid? What was the child [AJV] --

THE WITNESS: I don't know, but I can look. The first pay says sliding fee, that usually means there is no insurance, but I need to keep looking. And the the second page says Medicare --

THE COURT: So if he is on Medicare.

THE WITNESS: And then the third page says sliding fee, fourth says sliding fee, sliding.

THE COURT: So sliding means that they are going to check your income, and then charge you based on that, am I right?

THE WITNESS: Yes, that's what that means. But maybe there's another form that says -- usually when the babies come in first, they don't have the Medicare yet, and it says sliding, and then later on, if they get their Medicare, then there is something else, and then it says Medicaid here on page 20.

THE COURT: And Doctor, do you know -- you said you don't know the reason for that.

THE WITNESS: Yeah.

THE COURT: And what evidence do they have as to who the parent is?

THE WITNESS: I don't know what they do at the front desk. I'm assuming they ask for an ID or --

THE COURT: But how do you mean?

THE WITNESS: A birth certificate or something, I don't know.

THE COURT: Do they keep a copy of the birth certificate?

THE WITNESS: Not here, I don't see one here, and I don't think they do, but I don't know.

THE COURT: So, I could show up and say that's my child, treat him.

THE WITNESS: Right.

THE COURT: How would you know otherwise?

THE WITNESS: Right. Yeah, that's a question I would have to ask the front desk.

THE COURT: Okay. All right. Thank you. Because I know -- maybe my doctor is very lax because they let any of my sisters and any of my brothers take my kids.

THE WITNESS: No, we have to actually have --

THE COURT: When I am in trial, I can't go, so --

THE WITNESS: I am sure that can be done there once there is something written in the chart that says that those people are allowed to see you kid.

THE COURT: Because you are actually the one that is going to treat somebody.

THE WITNESS: Right, but I work at *Su Clinica*, it's not my private clinic, and the front desk sets their rules.

THE COURT: I see.

THE WITNESS: And we follow orders. It's not my own clinic, I'm sorry.

THE COURT: No, thank you for your service. I appreciate what you do.

THE WITNESS: Thank you.