**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00049-CR**

_____

**KELVIN NOEL VALLADAREZ-MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 20-10-12100-CR

**MEMORANDUM OPINION**

Kelvin Valladarez-Martinez ("Valladarez-Martinez") was convicted of continuous sexual abuse of a young child and sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Tex. Penal Code Ann. § 21.02(b). In two appellate points, he challenges his conviction, arguing that the trial court deprived him of due process of law by "commenting upon the weight of the evidence" and by "limit[ing] Appellant's right to confrontation[,]" in violation

1

of the due process clause of the United States Constitution and Texas Constitutions. Finding no reversible error, we affirm the trial court's judgment.

## Background

Valladarez-Martinez was charged with continuous sexual abuse of his daughter, Kristi (8 years old at the time of the assaults), and his stepdaughter, Suzanne (12 years old at the time of the assaults).[1] Multiple witnesses testified, including Kristi, Suzanne, their brother Javier, and their mother. Valladarez-Martinez also testified in his own defense. We consider the evidence in the light most favorable to the verdict, and summarize the relevant trial testimony below.

### A. Kristi and Suzanne's Testimony

Kristi and Suzanne described Valladarez-Martinez's years-long sexual abuse, recalling that the abuse often took place during the early morning hours, after their mother had left for work. They also testified that their brother Javier sometimes slept in the same room with them.

---

[1] We use pseudonyms to refer to the victims and their family members to conceal their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"). *See Smith v. State*, No. 09-17-00081-CR, 2018 WL 1321410, at *1 n.1 (Tex. App.—Beaumont Mar. 14, 2018, no pet.) (mem. op., not designated for publication).

Kristi stated that she did what she could to protect Suzanne from her father's abuse, including covering her with blankets in the bed the girls shared and trying to physically block Valladarez-Martinez's access to Suzanne.

The girls testified about when they told their mother about the abuse. Kristi explained that they told their mother on the same day that Suzanne "might have [been] caught doing drugs." Kristi then "realized [Suzanne] was also telling mom the reason why she was doing [drugs]." When their mother asked Kristi whether she also had been victimized, she denied it. During Defendant's cross-examination of Kristi, the following exchange took place:

> [DEFENSE ATTORNEY]: Okay. Well, then we get to the part where your sister makes the outcry to your mother, right?
>
> [KRISTI]: Yes.
>
> [DEFENSE ATTORNEY]: And your mother turns to you and asks: Did it happen to you? And what was your response?
>
> [KRISTI]: I said no.
>
> [DEFENSE ATTORNEY]: Why? And it had happened to you, hadn't it?
>
> [KRISTI]: Yes.
>
> [DEFENSE ATTORNEY]: According to your testimony?
>
> [KRISTI]: Yes.
>
> [DEFENSE ATTORNEY]: On multiple occasions?
>
> [KRISTI]: Yes.

3

[DEFENSE ATTORNEY]: Why would you tell your mother "no" if your sister was telling the truth?

[KRISTI]: Because I didn't care about me. All I wanted to do was to protect her.

[DEFENSE ATTORNEY]: Wouldn't it have made more sense to tell the truth?

[KRISTI]: I was too scared.

[DEFENSE ATTORNEY]: Why? Your sister was telling the truth.

[THE STATE]: Objection; badgering.

THE COURT: I am going to sustain as to tone. If you could rephrase the question and make it less confrontational a little bit. I don't think the question itself is badgering. I think the tone is somewhat.

[DEFENSE ATTORNEY]: Yes, Your Honor.

THE COURT: She may answer the question if she knows.

[DEFENSE ATTORNEY]: Yes, Your Honor.
        Let's go to the next question.

Defense counsel did not rephrase his question as the trial court suggested but then asked about Kristi's outcry to her math teacher that she was being "sexually abused."

**B. Javier's Testimony**

Javier testified that he saw Valladarez-Martinez get into bed with Kristi and Suzanne when he slept in the same room with his sisters. Due to his young age, however, he ascribed no significance to this activity. He explained his failure to

4

previously report his father's visits to the bedroom by noting that nobody specifically asked him about it.

### C. Mother's Testimony

Kristi's and Suzanne's mother testified that she was unaware of the girls' allegations of sexual abuse until after Child Protective Services intervened. She denied that Suzanne previously reported the abuse to her.

### D. Defendant's Testimony

Valladarez-Martinez denied the accusations. He testified that he often drove Mother to work in the mornings. Like some of the other witnesses, Valladarez-Martinez described the sleeping arrangements in the different homes where the family resided.

### E. Other Testimony

The jury also heard testimony from investigating officers and experts, including the nurse who performed a forensic sexual assault examination on Kristi and Suzanne. One of these witnesses was Danielle Madera, Ph.D., a psychologist with expertise in child sexual abuse. Dr. Madera testified about behavior common in child sexual abuse victims, including reasons that a victim might not report the abuse or might recant an accusation.

Another witness, Kelly Garcia, conducted forensic interviews with Kristi, Suzanne, and Javier. She described her training and experience in her field, as well

5

as the purpose and procedure of a forensic interview. During a bench conference addressing Javier's interview, the trial court directed defense counsel not to "take a tone with her."

**Analysis**

**A. The Trial Court's Comments**

In his brief, Valladarez-Martinez states that the trial court "repeatedly instructed his counsel to watch his tone with multiple witnesses." The trial court twice reminded defense counsel to be careful of his tone. He now argues that these warnings constituted impermissible comments on the weight of the evidence, and therefore violated his right to due process of law by depriving him of a "neutral, detached" judge.

Article 38.05 of our Code of Criminal Procedure provides that when ruling on the admissibility of evidence, a trial court "shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible.[]" Tex. Code Crim. Proc. art. 38.05; *see Costilla v. State*, 650 S.W.3d 201, 218 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We review such complaints under a de novo standard of review (noting that allegedly impermissible comments are a question of law). *Id.* A violation of 38.05 requires the appellate court to reverse if the trial court's comment was reasonably calculated to benefit the State

6

or prejudice the defendant's rights. *See Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017); *Costilla*, 650 S.W.3d at 218.

The trial court's initial warning about defense counsel's tone took place at the bench, out of the hearing of the jury. Because comments made outside the jury's hearing cannot have affected Defendant's right to a fair trial, and therefore cannot constitute reversible error, we need not decide whether this comment was improper. *See Costilla*, 650 S.W.3d at 219; *see also Baca v. State*, 223 S.W.3d 478, 482 (Tex. App.—Amarillo 2006, no pet.) (noting that events outside the jury's presence are not error).

The jury did, however, hear trial court's second comment sustaining the State's objection to defense counsel's tone. In order to constitute an impermissible comment on the weight of the evidence, the court's statement would have to be not only improper but would have to be reasonably calculated to benefit the State or prejudice the defendant's rights. *Proenza,* 541 S.W.3d at 791.

The trial court responded to an objection for "badgering" made by the opposing counsel to which the court responded that it was not badgering but the tone of the question was improper. We conclude the complained-of statement did not violate Article 38.05 because it was not reasonably calculated to benefit the State or prejudice the defendant's rights. *See Barron v. State*, 630 S.W.3d 392, 405-10 (Tex. App.—Eastland 2021, pet. ref'd).

7

Considering that a trial court enjoys "broad discretion to control the business of the court and in how he preserves proper order and decorum[,]" and further considering that not every critical remark will support a finding of bias, we cannot hold that the trial court's warning about counsel's tone constituted an impermissible comment on the evidence. *Simpson v. State*, 447 S.W.3d 264, 266 (Tex. Crim. App. 2014); *see also Barron,* 630 S.W.3d at 406 (discussing the standard applied to alleged comments on the weight of the evidence). The record shows the court was maintaining courtroom decorum. In fact, when we compare the *Barron* court's remarks to those in the instant case, we see that the *Barron* court's statements were more potentially problematic than the comparatively mild directive to defense counsel to watch his tone. In short, because the *Barron* court's comments did not rise to the level of reversible error, neither does the trial court's statement in this case. *See Barron*, 630 S.W.3d at 406-07; *see also Celis v. State*, 354 S.W.3d 7, 24 (Tex. App.—Corpus Christi-Edinburg 2011, *aff'd*, 416 S.W.3d 419) (Tex. Crim. App. 2013) (*quoting Liteky v. U.S.*, 510 U.S. 540, 554 (1994)) (A judge's efforts in courtroom administration is not a "valid basis for finding judicial bias, even if they displayed or included 'expressions of impatience, dissatisfaction, annoyance, and even anger.'").

We further observe that when considered in the context of the entire record, the trial court's warning was harmless if it was erroneous. *See Ex parte Scott*, 541

S.W.3d 104, 125 (Tex. Crim. App. 2017) (noting that a trial court's comment is considered reversible error "only if the comment was 'reasonably calculated to prejudice the defendant's rights'") (citation omitted); *see also Trung The Luu v. State*, 440 S.W.3d 123, 129 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (requiring a review of the entire record when evaluating any harm allegedly caused by judicial comments) (citation omitted). The entire record in this case consists of four volumes of testimony and contains only one such warning in the jury's presence. We cannot say that the trial court's statement was "'calculated to prejudice the defendant's rights.'" *Ex parte Scott*, 541 S.W.3d at 125. Valladarez-Martinez admitted as much by acknowledging that "nothing suggests the trial court intended any adverse consequences[.]"

We overrule Appellant's initial point of error.

## B. Confrontation

Valladarez-Martinez argues that the trial court denied him his right to confront witnesses against him.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

A Confrontation Clause violation, when it occurs, is constitutional error subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate

Procedure. *See Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); Tex. R. App. P. 44.2(a).

To preserve error for appellate review, including a constitutional error, the appellant must make a timely, specific objection to the trial court and obtain a ruling on the objection. Tex. R. App. P. 33.1; *Linney v. State*, 401 S.W.3d 764, 772-73 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Moreover, the point of error on appeal must correspond to the objection made at trial. *Linney*, 401 S.W.3d at 773 (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). Valladarez-Martinez did not satisfy this standard.

On appeal, Valladarez-Martinez contends that the trial court violated his right to due process of law by limiting his right to confront witnesses against him. He bases this allegation on the trial court's exclusion of evidence of Suzanne's alleged drug use and the trial court's warning about defense counsel's tone during Kristi's cross-examination. At trial, however, he made no such objection. Instead, he accepted the trial court's ruling excluding cross-examination about Suzanne's alleged drug use, and objected to the court's warning about tone only because he considered it an "improper comment on [his] ability as a lawyer." In neither instance did defense counsel make a specific objection claiming to have been denied the constitutional right to confront the witnesses against his client. Tex. R. App. P.

10

33.1(a)(1)(A); *Linney*, 401 S.W.3d at 773. Valladarez-Martinez therefore has failed to preserve error as to his Sixth Amendment complaint. *Id.*

Even had Valladarez-Martinez properly preserved error as to his current confrontation clause complaint, we would affirm his conviction because he has failed to show harm.. Tex. R. App. P. 44.2(a); *see Scott*, 541 S.W.3d at 125 (applying the harmless error rule to a trial court's comments); *see also Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citations omitted) (noting that exclusion of cumulative evidence is harmless). The excluded evidence of Suzanne's alleged drug use is rendered harmless by Kristi's testimony on the same subject. *Id.* The court's cautionary statement about tone, if error, was likewise harmless for the reasons set forth above.

We overrule Appellant's second point of error, also.

## Conclusion

Because the trial court neither commented on the weight of the evidence nor limited Appellant's ability to cross-examine a witness, and because Appellant failed to preserve error, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on February 29, 2024
Opinion Delivered March 6, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

12