**Opinion issued March 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00241-CR

————————————

**ROBERT E. CHENIER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1715091**

---

## MEMORANDUM OPINION

Appellant Robert E. Chenier was convicted of murder and sentenced to forty years in the Texas Department of Criminal Justice. In two issues, Chenier argues (1) the trial court violated the Texas Code of Criminal Procedure by making improper comments during voir dire, and (2) the trial court's limitation of his

examination of the decedent's father violated Chenier's rights under the Confrontation Clause of the U.S. Constitution.

We affirm.

## Background

Shaun "Milo" Lewis ("Shaun") died in the early morning hours of November 23, 2020 in Houston, Texas. According to the autopsy report, he was shot twice in the face. Robert Chenier was arrested and charged with Shaun's murder. Chenier confessed to his mother and his cousin that he shot Shaun, and a phone call from the Harris County jail and numerous tips to the police also implicated him in the murder. Chenier pleaded not guilty to the charge.

## Trial Proceedings[1]

The following witnesses testified for the State during trial.

**Officer Jesus Salinas**

Officer Jesus Salinas with the Houston Police Department ("HPD") testified he was dispatched to a crime scene at 4:36 p.m. on November 23, 2020. Upon arriving, he found a body in a field that was unrecognizable because it had no skin on his face. Houston Fire Department EMS, who pronounced the person dead, told him the body had been there about twelve hours.

---

[1] We only summarize the witness testimony that is pertinent to the issues raised by Chenier on appeal. The defense did not present any witnesses during the guilt-innocence phase of trial.

After discovering the body and securing the crime scene, Officer Salinas began to investigate. He spoke with Elbert Thomas, who had called 911 about the body. Officer Salinas did not find any eyewitnesses to the murder, but multiple people told him that shots had been fired around 3 a.m.

**Elbert Thomas**

Elbert Thomas was sleeping in his house on November 23, 2020. He awoke in the middle of the night to gunfire. He testified that bullets were "flying, ricocheting . . . everywhere" in his house. He "hit the floor" as the bullets were flying and he grabbed his gun. He went outside and heard two male voices. According to Thomas, one of the voices belonged to Chenier. Thomas heard shouting and then shooting. He saw someone who appeared to have been shot running or staggering toward a field. The next day Thomas went to work and when he got home, after learning a body was in the field, he called 911.

**Jose Matos Perez**

Officer Jose Matos Perez of the Houston Forensic Science Center was the lead crime scene investigator on the case. He testified that the decedent had an ID on him that identified him as Shaun Lewis. He stated that authorities recovered .40 caliber cartridges in the field and a projectile in Thomas' house, where they saw what appeared to be multiple bullet holes. No gun was discovered. According to Perez, they do not know what the murder weapon was.

3

**Sergeant Anthony Turner**

Sergeant Anthony Turner worked for HPD's homicide division when Shaun was killed. He testified that he received approximately fifteen tips about the case. The tips were consistent with Chenier being the shooter. He testified, "In terms of the information, we had Robert Chenier identified as the shooter." According to Sergeant Turner, the tips indicated Chenier told his mother and a cousin about the shooting. No one else was implicated as a suspect.

**Shantel Chenier**

Shantel Chenier ("Shantel") is Chenier's first cousin. In 2020, Chenier lived for a couple of months with her and her children. She and Chenier are "real close with each other." She testified that Chenier and Shaun had been friends, but some issues arose between them. She heard stories about Shaun's involvement in a shooting at Chenier's apartment approximately two months before Shaun's murder. She testified that she knew Shaun and Chenier had issues because "it was all around the neighborhood."[2]

Shantel testified that on November 23, 2020, she was asleep when Chenier woke her up. He told her "something had happened." Chenier told her he and Shaun had words, Shaun ran off, and Chenier chased him. Then, Chenier told her, Shaun "fell, he was pleading for his life and [Chenier] shot him." Chenier told

---

[2]    According to Shantel, Shaun was not charged in connection with the earlier shooting incident.

Shantel he was in a field when he stood over Shaun and shot him in the face. Chenier showed Shantel a picture of Shaun after he was dead. She said Chenier told her that as Shaun begged for his life, Chenier told him to "shut up" and then shot him. According to Shantel, Chenier had a party to celebrate Shaun's death.

Shantel testified that before going to her apartment, Chenier went to his mother's house. Shantel told Chenier he had to leave "[b]ecause I had kids in my house and I can't allow that around my house." After Chenier told her he killed Shaun, she was "kind of confused. Didn't really understand why he did that." Chenier also told her that Thomas owed him money and that before shooting Shaun, Chenier went to Thomas' house and "[s]hot up the house."

According to Shantel, she was threatened "maybe three" times before and after she spoke with police about the killing. She testified that she was asked probably twice not to come to court, most recently the day before she testified. She also received a threatening call ordering her to testify against Chenier. In that instance, she was told that if she did not testify, "they going to come shoot my house up."

Shantel stated she was testifying "to get justice" for Shaun. She felt like she was under duress during her testimony because she was "put in a bad position . . . that's my family." But she testified that she told police the truth about the shooting and that she was telling the jury the truth.

**Marie Antoinette "Toni" Chenier**

Marie Antoinette "Toni" Chenier ("Toni") is Chenier's mother. She testified that on November 23, 2020, she heard two gunshots in the middle of the night. The next morning, Chenier came over and told her he killed Shaun because Shaun "tried to get him killed." He showed her a photo on his phone of someone without a face, apparently Shaun. Toni wanted to call the police, but Chenier did not want to call, so she told him to leave.

Toni testified that she did not know what to do. "I didn't want to get him in trouble." Toni later asked Chenier, "'Did you really kill the guy?' And he said, 'Yes.' And I asked him where again and he pointed at [the field]."

Later that day, Toni went to Thomas' house because she remembered hearing gunshots from there during the night. Thomas told her Chenier had been shooting at Thomas' brother. According to Toni, Thomas' brother then went to the field and when he came back, he said a body was there. Thomas then called the police.

Toni stated that everything she was testifying about was true. "[Chenier] told me with his own mouth what happened." She testified that Chenier asked her not to testify against him.

**Detective Julio Flores**

Detective Julio Flores works for HPD's homicide division. He testified that when he took over the case, he learned that two fired casings were recovered, the murder happened between 3 and 4 a.m., and Shaun Lewis was the decedent. Detective Flores was able to access a Harris County Jail phone call involving another of Chenier's cousins, and based on that information and the information he got from Sergeant Turner, Detective Flores determined Chenier was the suspect in Shaun's murder.

According to Detective Flores, he spoke with Shantel and Toni. He met Toni, the suspect's mother, at her work and she was reluctant to speak with the police and "very nervous." "[S]he constantly was looking over her shoulder or out the window of my vehicle thinking that . . . somebody might be looking at her or watching her." However, Toni confirmed the information he had received, which was consistent with Chenier having shot Shaun.

Detective Flores testified about his conversation with Shantel. "She was afraid. . . . nervous because she's talking to the police . . . just wanted to get it out of her chest." He said Shantel corroborated where Shaun was found, that two firearms were used—one at Thomas' house and another to kill Shaun—and where Thomas' house was located. Shantel told him Toni might have details of the

murder. Detective Flores arrested Chenier. According to Detective Flores, authorities had no leads as to any suspects other than Chenier.

After just over two days of testimony, the jury convicted Chenier of Shaun's murder. The jury sentenced him to forty years in the Texas Department of Criminal Justice. This appeal ensued.

## Voir Dire

The indictment against Chenier alleged the offense of murder in the conjunctive under Texas Penal Code Sections 19.02(b)(1) and (2). Section 19.02(b) provides that a person commits the offense of murder if he "(1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual[.]" TEX. PENAL CODE § 19.02(b).[3] The indictment alleged Chenier "intentionally or knowingly cause[d] the death of Shaun Lewis . . . by shooting [Shaun] with a deadly weapon, namely a firearm" and "unlawfully intend[ed] to cause serious bodily injury to [Shaun] . . . and did cause the death of [Shaun] by intentionally and knowingly committing an act clearly dangerous to human life, namely shooting [Shaun] with a deadly weapon, namely a firearm."

---

[3] The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07(46).

8

In explaining the charges in the indictment during voir dire, the trial court judge told the venire panel:

> Okay. So I know those two paragraphs sound a little bit different. I'm going to go through them with you. The first paragraph is basically like—let's say Juror No. 6 and I get into a disagreement here and we go out to the parking garage and Juror No. 6 says, I don't like how she told me I'd have to be here, right, and I've got this firearm and I'm so angry that I want her to die.
>
> I know you would never do this, Juror No. 6, but you take out the gun and you shoot it—you shoot me square in the chest and that's pretty clear, like you meant for me to die, right? No one shoots somebody in the chest and goes, oopsie, right? Like I shot you on purpose and it happened to go in your chest but I didn't mean for you to die with that chest shot, okay? That would be a first paragraph murder, okay? I intended for you to die, I pulled the trigger, I aimed it squarely at your chest, now you're dead: First-paragraph murder.
>
> Second-paragraph murder is I unlawfully intended to cause serious bodily injury to someone, so I committed an act clearly dangerous to human life, and then that person died. So if Juror No. 6 is like, Well, I don't like her, and I'm going to shoot her in the thigh, would everybody consider that an act clearly dangerous to human life, shooting someone in the thigh? Right? Okay. We all can agree that that would cause somebody, potentially, death, right, and they might bleed out, especially if they're not getting medical intervention, okay?
>
> So she shoots me in the thigh and later I die. She can't then go, Well, I just meant to hurt her a little so I shot her in the thigh. It's not my fault she died because she didn't call 911 fast enough, right? That is why the second-paragraph murder exists, okay, so that if someone's a bad shot or they're meaning to cause an act clearly dangerous to human life and then that person dies, it's still a murder. Everybody understand the difference between the two?  And you can believe one or the other beyond a reasonable doubt and that would be a murder, okay?

In his first issue, Chenier complains about these statements by the trial judge to the venire panel. He argues the trial court violated Article 38.05 of the Code of Criminal Procedure because the statements were a comment on the weight of the evidence.[4]

**A.**   **The trial court did not violate Article 38.05 of the Code of Criminal Procedure.**

Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05. Article 38.05 "forbids a trial judge from making, 'at any stage of the proceeding previous to the return of the verdict, . . . any remark calculated to convey to the jury his opinion of the case.'" *Irsan v. State*, 708 S.W.3d 584, 606 (Tex. Crim. App. 2025) (quoting TEX. CODE CRIM. PROC. art. 38.05). And it prohibits the trial judge from "commenting on the weight of the evidence in criminal proceedings or otherwise divulging to the jury her opinion of the case[.]" *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App.

---

[4]   Although this complaint was not raised in the trial court, Chenier may argue it on appeal. *See Proenza v. State*, 541 S.W.3d 786, 802 (Tex. Crim. App. 2017) ("[C]laims brought under Article 38.05 are not . . . subject to forfeiture by inaction."); *Irsan v. State*, 708 S.W.3d 584, 607 (Tex. Crim. App. 2025) ("We have held that a party may assert an Article 38.05 violation for the first time on appeal.").

2017). "[T]o constitute reversible error [under] Article 38.05 . . . the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights." *Id.* (quoting *McClory v. State*, 510 S.W.2d 932, 934 (Tex. Crim. App. 1974)). When deciding whether a comment is improper under Article 38.05, the reviewing court should consider the comment "in the context of a particular trial." *Id.* at 800.

Chenier argues the trial court violated Article 38.05 because the complained-of comments were improper and material. He argues that the comments "very literally commented on the weight of the evidence and communicated the judge's opinion of the merits of a murder case with a like set of facts," lowering the State's burden to prove murder. We disagree.

On their face, the hypothetical comments of which Chenier complained did not violate Article 38.05. The comments were not made while ruling on the admissibility of evidence, nor did they convey an opinion about this case. The court's statements were also not a comment on Chenier's guilt. As the State notes, the court's hypotheticals began with the premise that a juror shot the judge in the chest or thigh, intended to do so, and had motive. The hypotheticals were clearly intended to illustrate the differences between Sections 19.02(b)(1) and 19.02(b)(2) of the Penal Code.

The court's statements did not address the threshold issue in Chenier's defense—whether he was the shooter—an issue Chenier contested. Moreover, the trial court judge emphasized the presumption of innocence and the State's burden to prove Chenier's guilt beyond a reasonable doubt in her subsequent comments to the panel. Immediately after making the comments of which Chenier complains,[5] the trial court judge stated, "So the State has to prove each and every one of those elements beyond a reasonable doubt." And the trial court judge asked the panel members row by row if they could follow the law on the presumption of innocence. The court stated, "So the State certainly hasn't proven their case at this point, right? And so can everybody follow the law on the presumption of innocence? . . . He's presumed innocent." None of the panel members said they could not follow the law on the presumption of innocence. *See Irsan*, 708 S.W.3d at 607 (holding that trial court's "inartful" comment did not destroy presumption of innocence because "[t]he comment was brief, the trial judge later emphasized the importance of the presumption of innocence, and none of the [affected] veniremembers spoke up when the trial judge asked whether they 'could not give [the appellant] that all-important presumption of innocence'"); *Rodriguez v. State*, 728 S.W.3d 228, 238 (Tex. App.—Houston [1st Dist.] 2025, pet. ref'd) (overruling appellant's argument that trial court's comment violated his presumption of

---

[5] The comments at issue comprise four paragraphs of 102 pages of voir dire.

12

innocence because "[t]he trial court's comment was brief, the trial court and the parties discussed the presumption of innocence, and none of the venire members spoke up when defense counsel asked if they could not presume the appellant's innocence."); *Rivera v. State*, No. 01-24-00030-CR, 2025 WL 3028898, at *2 (Tex. App.—Houston [1st Dist.] Oct. 30, 2025, no pet.) (mem. op., not designated for publication) (holding trial court's comments during voir dire did not constitute reversible error because, among other things, "[t]he record shows the judge instructed the jury at length on the presumption of innocence. The record likewise shows that no juror stated he or she could not presume Rivera's innocence. Plus, the jury charge instructed on the burden of proof.").[6]

Finally, the trial court judge told the jury panel:

And we don't know what this case is. I don't know any of the facts of this case. My job is to follow the law and make sure that during the course of trial the law is continued to be followed, okay? It's the attorneys, their job is to present the evidence to you.

Considering the trial court judge's statements in context, as we must, we conclude that they did not infringe on the presumption of innocence or reflect a bias by the trial court judge. "Because the trial judge's comments do not show a lack of impartiality or undermine the presumption of innocence, his comments do not

---

[6]  The jury charge included instructions on the burden of proof and the presumption of innocence.

13

constitute error." *Loge v. State*, 550 S.W.3d 366, 382 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

**B.      Even if the statements violated Article 38.05, Chenier has not shown harm.**

Even if we concluded the complained-of statements violated Article 38.05, we must conduct a harm analysis to determine whether the error was reversible. We employ a non-constitutional harm analysis pursuant to Rule of Appellate Procedure 44.2(b) in reviewing error under Article 38.05. *Proenza*, 541 S.W.3d at 791 (citing *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005)). We review the entire record. We consider "testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)).

In our analysis, we disregard any violations unless they "affect[ed] substantial rights." TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If "the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Moore v. State*, 624 S.W.3d 676, 683 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). We consider in our analysis whether "the error adversely

affected the integrity of the process leading to the conviction." *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); *see also Tennison v. State*, 814 S.W.2d 484, 486 (Tex. App.—Waco 1991, no pet.) (stating that "mere violation" of Article 38.05 "does not necessarily constitute reversible error," and if error "made no contribution to the conviction or the punishment of the defendant, then the error will be deemed to have been harmless").

Chenier argues that the trial court's comments conveyed to the jury her opinion "that [Chenier's] guilt depended on the location of a gunshot—specifically, that if somebody was shot by a gun in either a kill spot or any important part of the body—that the shooter certainly intended to cause death or serious bodily injury." Chenier posits on appeal that "[i]t is possible for someone to recklessly or negligently (rather than intentionally or knowingly) shoot a gun and hit someone in the chest or other important body part[.]" But Chenier never argued during trial that he shot Shaun recklessly or negligently.[7] Nor did any other witness make such a suggestion. Rather, Chenier's defense was based entirely on identity—that he did not fire the gun that killed Shaun.

During opening arguments, defense counsel stated that the State would make a "bunch of accusations . . . that will not be able to be backed up or corroborated. It's going to be a series of dots and they're going to have a tough time connecting

---

[7]     Chenier did not testify at trial.

15

those dots." During closing arguments, defense counsel said there was "no physical evidence linking Mr. Chenier to the homicide" and that the jury had "not heard one expert conclusively say he's linked to this homicide." He continued, "If there was one shred of physical evidence available, they would have presented it to you." Finally, he said, "You have no evidence linking [Chenier], no physical evidence linking him, no scientific evidence linking him, nothing of the sort."

There was never any hint during Chenier's opening or closing argument that he shot Shaun unintentionally, recklessly, or negligently. Nor was there any testimony or questioning of any witness that would support such a scenario. The fact that the trial court judge's comments had no bearing on the defense's theory of the case, coupled with the testimony that supports the jury's verdict, weigh against a finding of harm.[8] *See Schmutz*, 440 S.W.3d at 39 (noting that appellate courts consider entire record, including defensive theories, in harm analysis); *see also Flores v. State*, No. 13-22-00596-CR, 2024 WL 4986400, at *12 (Tex. App.—Corpus Christi–Edinburg Dec. 5, 2024, pet. ref'd) (mem. op., not designated for

---

[8] Chenier takes issue with the State's argument that the trial court's comment was harmless because "it was not a defense theory that this was a recklessness-oriented shooting." Chenier argues this argument is irrelevant "because the State still has the burden to prove all essential elements of murder regardless of the defensive theory." But we fail to see how the trial court's comments lessened the State's burden to prove the elements of murder. During voir dire, the trial court judge told the venire panel that the State had "to prove each and every one of those elements beyond a reasonable doubt," that "it was the defendant who did it, that it was intentionally or knowingly," and the jury charge reflected the State's burden.

publication), *cert. denied*, 223 L. Ed. 2d 279 (Dec. 8, 2025) ("Considering the limited nature of the comment, together with the nature and degree of the evidence supporting conviction, we cannot say that the complained-of comment had any more than a slight effect on the jury's verdict, if any.").

The evidence showed that:

- Chenier confessed to his mother that he killed Shaun. He showed her a photo on his phone of someone without a face, apparently Shaun. Toni testified that she asked him if he really killed Shaun and Chenier confirmed he did;

- Shantel testified that Chenier told her they were in a field when Chenier stood over Shaun and shot him in the face. Chenier showed her a picture of Shaun after he was dead. She said Chenier told her that as Shaun begged for his life, Chenier told him to "shut up" and then shot him. According to Shantel, Chenier had a party to celebrate Shaun's death;

- A jail telephone call involving Chenier's cousin implicated Chenier as Shaun's killer;

- Tips to the police only implicated Chenier; and

- Thomas testified that he recognized Chenier's voice when he heard two men arguing before the shooting began.

On this record, and given the evidence supporting Chenier's conviction, we conclude that even if the trial court's comments violated Article 38.05, the error was harmless. *See Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002) ("[E]vidence of the defendant's guilt is a factor to be considered in any thorough harm analysis."); *Harris v. State*, No. 12-24-00165-CR, 2025 WL 211634, at *8 (Tex. App.—Tyler Jan. 15, 2025, no pet.) (mem. op., not designated for

17

publication) ("[H]aving concluded beyond a reasonable doubt . . . that the comment to which Appellant objects did not contribute to the jury's determination of his guilt, we similarly conclude that the comment did not have a substantial or injurious effect or influence in determining the jury's verdict.").[9]

We overrule Chenier's first issue.

## Confrontation Clause

In his second issue, Chenier complains that the trial court's limitation of his right to cross-examine Shaun's father violated his rights under the U.S. Constitution's Confrontation Clause. "The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him." *Paredes v. State*, 462 S.W.3d 510, 514 (Tex. Crim. App. 2015).

Johnny Lewis, Shaun's father, testified that he was called to the murder scene "12 to 15 hours" after his son's death but "was denied the chance to identify him because the policeman said that he might not be recognizable because of his injuries." Asked to describe his son, Johnny testified that "quite a few people" told him how "mannerable" and "respectful" Shaun was.

---

[9]     *See also Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) ("Important factors [in a Rule 44.2(b) harm analysis] include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present.") (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)).

At that point, the defense told the trial court that the State "kind of opened the door when they asked him about Mr. Lewis' character and they described him as being so mannerable and things like that." Defense counsel stated he wanted to ask Johnny about a 2019 assault charge against Shaun.[10]

The trial court had a hearing outside of the jury's presence during which the defense questioned Johnny on voir dire about the 2019 case, which involved an alleged assault against Shaun's daughter.[11] Johnny said he knew there was a "misunderstanding" that was brought to the court system but he did not have the "full details as to what occurred." Johnny told the State that he was not a witness to the incident, he never spoke with Shaun about it, and that his knowledge of the case was based on what others told him. He said he "really [didn't] know what [Shaun] was charged with" but that he "might have spent a day or two in jail." He said he did not get a chance to talk to Shaun about the incident and he "assume[d] they made up or talked about it" because Shaun and his daughter were "act[ing] as if nothing happened."

---

[10] Chenier argues that had he been able to cross-examine Johnny as he wanted, he could have "dispell[ed] the false notion that [Shaun] was well-mannered and respectful," which "was important to leaving open the possibility that [Shaun] may have made other enemies."

[11] The charge was dismissed because of Shaun's death.

19

The State objected to the admission of Johnny's testimony regarding the assault charge on the grounds of relevance and "improper character evidence." The State argued:

> This witness has absolutely no personal knowledge of this incident, he's shown that he was not a witness, he did not observe the incident. Everything that he has learned about the incident is hearsay. Also his testimony today talks nothing about it being a violent offense and, therefore, I don't believe it would be proper character evidence to allow this witness to testify . . . regarding this incident.

In response, the defense stated:

> I feel like they did open the door in asking about Mr. Lewis' character to a degree, at least he answered the question that kind of spoke of his character about how mannerable he was. This is not too prejudicial.

The court responded that the State was objecting based on speculation and hearsay, not based on Texas Rules of Evidence 401 (relevance) or 403 (exclusion of relevant evidence for prejudice, confusion, or other reasons).[12] The defense responded that Johnny had "information about what happened" and that he "did deliver some personal information about it that came from a party involved." The defense conceded the information came from "[o]ther people's words," and the

---

[12] Texas Rule of Evidence 403 allows the trial court to

> exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

TEX. R. EVID. 403.

trial court sustained the State's objection. Defense counsel stated he was not planning on eliciting any other character evidence from Johnny.

Chenier argues that his rights under the Confrontation Clause were violated because his attempted cross-examination of Johnny regarding the assault charge "would have given the jury a 'significantly different impression of [the witness's] credibility' and potential bias[.]" He argues that his attempted inquiry into Johnny's knowledge of Shaun's "violent past" was the "thrust of the cross-examination" and his inability to pursue that line of questioning violated his right to confront the witness testifying against him.

The defense did not argue during trial that restricting Chenier's ability to cross-examine Johnny violated Chenier's rights under the Confrontation Clause. It is thus precluded from making that argument on appeal. *See Cruz-Garcia v. State*, No. AP-77,025, 2015 WL 6528727, at *15 (Tex. Crim. App. Oct. 28, 2015) (not designated for publication) ("Because appellant did not object in the trial court on Confrontation Clause grounds, he has not preserved that claim for review in this Court."); *see also Golliday v. State*, 560 S.W.3d 664, 671 (Tex. Crim. App. 2018) ("Appellant did not clearly articulate a constitutional basis supporting the admission of the excluded evidence at trial. Consequently, he did not preserve a constitutional claim for appeal."); *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) (stating that "right of confrontation is a forfeitable

21

right . . . and must be preserved by a timely and specific objection at trial.") (citing TEX. R. APP. P. 33.1); *see generally Reyna v. State*, 168 S.W.3d 173, 179–90 (Tex. Crim. App. 2005) ("Because Reyna 'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had the opportunity to rule upon' this rationale." . . . "The Court of Appeals erred in reversing Reyna's conviction on a ground that he did not present to the trial judge.").

Because Chenier did not preserve his Confrontation Clause argument, we overrule his second issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).