**Opinion issued June 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00705-CR

————————————

**JOSE ALBERTO AMAYA PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1636284**

---

## MEMORANDUM OPINION

A jury convicted Jose Alberto Amaya Perez of the first-degree felony offense

of continuous sexual abuse of a young child and assessed his punishment at thirty-

three years' confinement.[1] The trial court further imposed a $100 "Child Abuse Prevention Fine."

In three issues on appeal, Amaya Perez contends that (1) the indictment was insufficient; (2) the trial court made improper remarks during voir dire; and (3) the trial court improperly assessed the "Child Abuse Prevention Fine," which does not apply to offenses committed before January 1, 2020.

We modify the judgment and affirm as modified.

## Background

Amaya Perez was indicted for continuous sexual abuse of a young child. The indictment alleged that he committed at least two acts of sexual abuse against a young child, including specific acts in January 2018 and June 2019 constituting the offense of aggravated sexual assault.

Amaya Perez does not challenge the sufficiency of the evidence, so a detailed recitation of the underlying facts is not necessary. It is sufficient to say that the complainant, who was ten years old at the time of trial in 2023, testified that Amaya Perez molested her on multiple occasions beginning when she was four years old and ending when she was six years old. Amaya Perez appeals.

---

[1]    *See* TEX. PENAL CODE § 21.02(b).

**Signature on the Indictment**

In his first issue, Amaya Perez contends that the indictment is invalid because it was signed by an assistant foreperson of the grand jury, not its foreperson. He argues that the lack of the foreperson's signature renders the indictment insufficient under Code of Criminal Procedure article 21.02. That article lists a series of "requisites" that an indictment must contain to be "deemed sufficient," including that the indictment "shall be signed officially by the foreman of the grand jury." TEX. CODE CRIM. PROC. art. 21.02(9). Amaya Perez argues that the insufficiency of the indictment means the trial court never obtained personal jurisdiction over him, and therefore the judgment is void.

Assuming Amaya Perez preserved this issue, the Court of Criminal Appeals has rejected it. *See Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000) (citing article 21.02 and holding that "lack of a signature is of no consequence in this matter, and is, in fact, not essential to the validity of an indictment"); *Tatmon v. State*, 815 S.W.2d 588, 589–90 (Tex. Crim. App. 1991) (same); *Owens v. State*, 540 S.W.2d 324, 325–26 (Tex. Crim. App. 1976) (same); *see also Nwosoucha v. State*, 325 S.W.3d 816, 829 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (applying *Riney* and *Owens*).

Amaya Perez argues that the Court of Criminal Appeals misapplied the 1966 changes to Code of Criminal Procedure article 27.09. In relevant part, that article

3

provides, "Exceptions to the form of an indictment or information may be taken for . . . want of any requisite prescribed by Articles 21.02 and 21.21." TEX. CODE CRIM. PROC. art. 27.09(2).

But in *Tatmon*, the Court of Criminal Appeals expressly considered the 1966 changes to article 27.09 and nonetheless concluded that "the absence of [the grand jury foreperson's] signature did not adversely affect the validity of the indictment." 815 S.W.2d at 589–90. We therefore hold that the signature of the assistant grand-jury foreperson on Amaya Perez's indictment did not render it invalid.

We overrule Amaya Perez's first issue.

## Judicial Remarks

In his second issue, Amaya Perez asserts that during voir dire, the trial court violated Code of Criminal Procedure article 38.05 by making comments that improperly conveyed the judge's opinion of the case to the potential jurors.[2]

---

[2] Amaya Perez did not object to any of these comments in the trial court, a typical requirement to preserve a complaint for appellate review. *See* TEX. R. APP. P. 33.1(a). But the Court of Criminal Appeals has held that claims of improper judicial comments raised under article 38.05 are not forfeitable rights. *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). Rather, "the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right." *Id.* Because the record does not show that Amaya Perez "waived his right to his trial judge's compliance with Article 38.05, his statutory claim in this matter is not forfeited and may be urged for the first time on appeal." *See id.*

## A.     Standard of Review

A trial court "has broad discretion in the manner it chooses to conduct voir dire, both as to the topics that will be addressed, and the form and substance of the questions that will be employed to address them." *Jacobs v. State*, 560 S.W.3d 205, 210 (Tex. Crim. App. 2018). But article 38.05 prohibits a judge from making "any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. art. 38.05. To constitute reversible error under article 38.05, "the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights." *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017) (quotation omitted); *see Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that trial court improperly comments on weight of evidence if comment implies approval of State's argument, indicates any disbelief in defense position, or diminishes credibility of defense's approach to case).

Typically, error is subject to non-constitutional harm analysis under Rule of Appellate Procedure 44.2(b). But Amaya Perez contends that his asserted error—a judge who is not impartial—is structural and therefore does not require harm to be reversible. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991) (stating that trial judge who was not impartial is "structural defect[] in the constitution of the trial mechanism" and not subject to harm analysis). We disagree.

The Court of Criminal Appeals has repeatedly applied the Rule 44.2(b) harm standard to a claim that a trial judge's comments violated article 38.05. *E.g.*, *Irsan v. State*, 708 S.W.3d 584, 606 (Tex. Crim. App. 2025) ("[T]o obtain a reversal on an Article 38.05 violation, the claimant must show that the violation was harmful, that is, he must show that it affected his substantial rights.") (quotation omitted). "[W]hen only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis." *See Proenza*, 541 S.W.3d at 801 (holding that court of appeals erred by applying harm standard for constitutional error "despite Proenza's assertion of a bare statutory claim" under article 38.05) (quotation omitted). This Court has likewise held that "[v]iolations of Article 38.05 are subject to the standard of harm for non-constitutional error." *Rodriguez v. State*, 728 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2025, pet. ref'd). Under this well-established law, the challenged violations of article 38.05 are subject to a harm analysis under Rule 44.2(b).

Rule 44.2(b) provides that any non-constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Rodriguez*, 728 S.W.3d at 234 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *see Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) ("[A]n error had a substantial and injurious

6

effect or influence if it substantially swayed the jury's judgment."). An appellate court will not overturn a criminal conviction for non-constitutional error if the court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or had but a slight effect. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

**B.      Analysis**

Amaya Perez challenges multiple comments made by the trial court to the potential jurors during voir dire:

- After reading the indictment, the trial court said: (1) "I know every time I pick a jury on one of these types of cases that I have a lot of people say I could just never be a juror because I hate child sexual abuse"; and (2) "Let me assure you that everybody in this room hates child sexual abuse, okay?"

- The court used graphic language to describe acts constituting the predicate offense of aggravated sexual assault.

- The court indicated its opinion that the minimum 25-year sentence for the offense would be too low in this case by comparing it to a hypothetical Romeo and Juliet scenario and saying "it's not necessarily this case."

- The court told the jury: "We also, unfortunately, deal with cases of this type frequently."

- The court indicated that the potential jurors (and later the selected jurors) were unlucky for having been selected for jury duty in a case involving sexual assault of a child.

He argues that these statements conveyed the court's opinion "that the case was extremely distasteful and repulsive." He also argues that the statements contained too many "case-specific facts." Thus, the trial judge improperly conveyed her opinion of the case to the jury. *See* TEX. CODE CRIM. PROC. art. 38.05.

We conclude that none of these statements were reversible error. While the Romeo and Juliet hypothetical gives the Court pause, we ultimately conclude that it did not affect Amaya Perez's substantial rights. The remaining statements did not violate article 38.05.

Begin with the remaining statements. The record shows that while the statements discussed the offense generally, they did not convey the judge's opinion about Amaya Perez's case specifically. Context is key to this analysis.

For example, the trial court began voir dire by explaining several key aspects of a criminal trial, including the elements of the charged offense, the presumption of innocence, the right against self-incrimination, and witness credibility. Before discussing the elements of the offense, the court read the indictment charging Amaya Perez with continuous sexual abuse of a young child. Amaya Perez concedes that "[t]he judge's reading of the indictment during voir dire is not, in and of itself, an error." But he argues that reading the indictment to the jury "revealed the case involved a distasteful subject—the continuous sexual abuse of a child," and the trial court's later statements conveyed the court's opinion that "the case was distasteful and repulsive."

To an extent, Amaya Perez does directly challenge the reading of the indictment because he argues that it contained "too many case-specific facts," and therefore reading it revealed the judge's opinion of the case. To support this

argument, Amaya Perez relies on an unpublished opinion from our sister court to assert that a trial court could violate article 38.05 by mentioning too many case-specific facts. *See Gibson v. State*, No. 14-19-00827-CR, 2020 WL 7626406 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication). *Gibson* was not designated for publication, so it has no precedential value. TEX. R. APP. P. 47.7(a); *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd) ("[T]he court to whom an unpublished opinion is cited has no obligation to follow the opinion or to specifically distinguish such opinion.").

But even so, we disagree with the premise that the indictment contained too many facts specific to Amaya Perez's case. The indictment contains as few specific factual details as necessary to support the allegations for each element of the offense.[3] But it does not include the age of the complainant or details about the alleged sexual abuse. It simply contains no additional details regarding the offense or indicate what evidence the State will introduce in an attempt to prove its case against Amaya Perez. *See Jenkins v. State*, 732 S.W.3d 268, 273 (Tex. App.—

---

[3] The indictment alleges that "in Harris County, Texas, [Amaya Perez], hereafter styled the Defendant, heretofore on or about June 22, 2019, did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of aggravated sexual assault of a child, committed against I.C. on or about January 1, 2018, and an act constituting the offense of aggravated sexual assault of a child, committed against I.C. on or about June 22, 2019, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts."

Houston [14th Dist.] 2025, pet. ref'd) (concluding that trial court did not err by reading indictment during voir dire in part because "the indictment does not provide additional details regarding the offense or outline the evidence that the State will supply in an attempt to prove the alleged offense"). The indictment did not contain too many case-specific facts such that reading it conveyed the trial judge's opinion of the case.

> After reading the indictment, the court told the jury:

> So let me explain a couple of things in that indictment that you've heard. First, *I know every time I pick a jury on one of these types of cases that I have a lot of people say I could just never be a juror because I hate child sexual abuse.*

> *Let me assure you that everybody in this room hates child sexual abuse, okay?* So the point, though, is you have to wait and listen to the evidence to determine whether it occurred, okay? And that's all we're asking is that you follow the law and keep an open mind and hold the State to their burden of proof, which is . . . [b]eyond a reasonable doubt, yes.

(Emphasis added.) Amaya Perez asserts that reading the indictment "revealed the case involved a distasteful subject—the continuous sexual abuse of a child," and the emphasized language indicated that the subject "was so awful" and hated that many potential jurors could never consider serving on a jury for such a trial involving that subject.

We agree that the trial court acknowledged the distastefulness of the charged offense, which involved continuous sexual abuse of a child. But acknowledging the

10

distastefulness of a category of offenses does not convey the judge's opinion about the defendant's particular case. The comment did not single out Amaya Perez or contain specific facts about his case. And the comment was part of a larger point: Despite the heinous nature of the offense, the jurors must decide guilt based on the presented evidence—not merely on the allegations in the indictment—and ensure the State's evidence meets its high burden of proof. The challenged comments were not reasonably calculated to benefit the State or prejudice Amaya Perez's rights. *See Proenza*, 541 S.W.3d at 791.

The trial court then discussed the elements of the offense. This discussion included the elements of the predicate offense of aggravated sexual assault:[4]

> In this indictment, the State has alleged aggravated sexual assault of a child. What makes it aggravated is just the age of the child, which is under 14. Okay? We're not talking about the use of weapons or anything like that. . . .

> But an aggravated sexual assault can occur by penetrating a sexual organ or anus with any object, penetrating a mouth with a sexual organ or making contact between two sexual organs. It's not necessarily penetration of a vagina with a penis but contact between vagina and penis is enough. And you're going to hear a lot of body parts, okay, throughout the voir dire today. So, welcome to health class.

---

[4] *See* TEX. PENAL CODE § 21.02(c)(4) (stating that "act of sexual abuse" within meaning of continuous sexual abuse of young child offense "means any act that is a violation of one or more of the following penal laws: . . . aggravated sexual assault under Section 22.021").

Amaya Perez argues that this discussion "delved deeper into the general nastiness of the case" by using graphic language to describe the predicate offense. But this language accurately tracks the statutory language. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i)–(iii). It contained no specific details about the facts of Amaya Perez's case, and it was not reasonably calculated to benefit the State or prejudice Amaya Perez's rights. *See Proenza*, 541 S.W.3d at 791.

Later, after briefly discussing lesser included offenses and confirming that no potential juror was unable to sit in judgment of another person, the trial court commented:

> And just so y'all know, the lawyers might use a little levity like I have done throughout my voir dire. It doesn't mean that we don't take these cases seriously; we just find that these are very serious topics and sometimes people are a little bit more comfortable talking if we add in a little humor from time to time. *We also, unfortunately, deal with cases of this type frequently*.

(Emphasis added.) The court asked if anyone had any personal experience with sexual assault or believed they might "be a good juror in maybe a theft case but definitely not a sexual assault because of [their] experience." Amaya Perez argues that these statements "continued [the trial court's] ickiness-of-the-case theme . . . ." But as we discussed above, acknowledging the distastefulness of a type of offense does not necessarily convey an opinion on the facts of a particular case. The comments offered an explanation about why the trial court and the attorneys— including Amaya Perez's attorney—may appear at times to lack the seriousness

12

appropriate for a serious criminal offense and why some jurors might not be a good fit for the type of case. The comments did not mention Amaya Perez or the facts of his case, and they were not reasonably calculated to benefit the State or prejudice the defense. *See id.*

> The trial court also made comments implying that the jurors were unlucky:
>
> I get calls all the time from my friends when they get that scary piece of paper in the mail that says it's your lucky day, you get to go down to the criminal courthouse for jury duty, okay? And what do you think the first thing they ask me when I pick up the phone is? . . . How do I get out of it? And I say, don't you worry, I know if you tell the truth, you're going to say something that ticks one side or the other off so you probably won't get picked, okay?
>
> So just keep in mind that your oath is to tell the truth. We want the whole truth. We are not mind readers. . . .

After the jury was chosen, the trial court said, "To our lucky 14, we have lunch for you."

These comments addressed a common perception that people generally do not favor jury duty, and they were lighthearted and non-prejudicial. The court made these comments in addressing a larger point that the potential jurors took an oath to tell the truth even if they might be tempted to distort the truth to avoid sitting on a jury. None of the statements were directed at Amaya Perez's case specifically, but jury duty generally.

13

In short, the record does not indicate that any of these comments were reasonably calculated to benefit the State or prejudice Amaya Perez. *See id.* They were therefore not improper under article 38.05.

But the Romeo and Juliet hypothetical is different. Toward the end of its voir dire, the trial court explained to the potential jurors that if Amaya Perez were found guilty, the jury would then consider his punishment, and each juror must consider the entire range of punishment. The court then asked if any potential juror could not consider the minimum 25-year sentence for the charged offense "in the appropriate case[.]" Someone asked about the meaning of "appropriate," prompting the trial court to respond:

> Okay. So you might be sitting here thinking, there's no way I could give 25 years to someone who I believe sexually abused a child twice, okay? But *let's say it's not necessarily this case, okay*, but let's say that you've got a case where a 18-year-old who's a senior in high school, right, had a relationship with a freshman in high school, okay, and they are more than three years apart, because three years is our Romeo and Juliet statute, okay? You can have—can be a high school senior and have sex with somebody within three years and the law doesn't say prosecute you as long as it is voluntarily between both partners, okay?
>
> But if you're 18 and a senior and you're having a relationship with someone who's, say, a freshman and she's more than three years younger than you are, let's say, that person—they're in a committed relationship but she comes from a very conservative family and her dad learns that they have not had sex but he has digitally penetrated her vagina, okay, so he has penetrated her vagina with his finger and it happened at least twice outside of 30 days and the dad is like, I want to prosecute, okay? That might be a case where you would consider the minimum sentence instead of saying, throw the book at that person, let's put them in—life in prison. Understand?

(Emphasis added.) Amaya Perez argues that the trial court erred by saying "it's not necessarily this case" and describing a Romeo and Juliet hypothetical in which an 18-year-old high school senior has an ongoing sexual relationship with a freshman student more than three years younger. He asserts that this contrasting hypothetical conveyed the judge's opinion that the minimum sentence "would be too low in this case" because it is "just that disgusting."

This argument has some force. The hypothetical was not necessary to explain when a minimum punishment might be appropriate and that the jury must consider the minimum punishment. Moreover, the hypothetical itself involved a sexual relationship between two high school students, which did not apply to Amaya Perez, who was old enough to date the complainant's mother. The trial court said as much: "it's not necessarily this case." Even if the trial court did not intend to convey its opinion of the case, this remark comes close to doing so. *See* TEX. CODE CRIM. PROC. art. 38.05. Nonetheless, we need only assume error, because we ultimately conclude that any error was harmless.

After examining the record as a whole, we have fair assurance that the error did not influence the jury or had only a slight effect. *See Gonzalez*, 544 S.W.3d at 373. Later in voir dire, defense counsel asked the potential jurors if they could consider the minimum 25-year punishment. But unlike the trial court, defense counsel did not employ a hypothetical to make the point, and no potential juror said

15

they could not consider the minimum punishment. This mitigated some of the prejudice of the trial court's earlier question and hypothetical.

Amaya Perez does not challenge the sufficiency of the evidence establishing guilt. The complainant testified about multiple instances of sexual abuse by Amaya Perez over several years when she was between the ages of four and six. This evidence was sufficient to support the conviction. Moreover, the jury ultimately assessed punishment at 33 years' incarceration, slightly above the minimum sentence of 25 years. The punishment was likely influenced by the facts showing that Amaya Perez sexually abused his girlfriend's very young child. We therefore have fair assurance from the record as a whole that any error in providing the Romeo and Juliet hypothetical did not influence the jury or had but a slight effect. *See id.* We conclude that any error in the trial court's remarks did not affect Amaya Perez's substantial rights, and such error must be disregarded. *See* TEX. R. APP. P. 44.2(b).

We overrule Amaya Perez's second issue.

### Assessment of Child Abuse Prevention Fine

Prior to January 1, 2020, Code of Criminal Procedure article 102.0186 was entitled "Additional Costs Attendant to Certain Child Sexual Assault and Related Convictions" and provided that a person convicted of several different offenses, including continuous sexual abuse of a young child, "shall pay $100 on conviction

16

of the offense." *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 3.24, sec. 102.0186(a), 2007 Tex. Gen. Laws 1120, 1137 (amended 2019).

In 2019, the Legislature changed the title of article 102.0186 to "Fine for Certain Child Sexual Assault and Related Convictions" and reclassified the required $100 payment as a fine. *See* TEX. CODE CRIM. PROC. art. 102.0186(a); Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 2.39, 2.40, sec. 102.0186(a), 2019 Tex. Gen. Laws 3981, 4006; *McCarter v. State*, 722 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2025, no pet.). The Legislature provided that "the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act," and "[a]n offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed." *See* Act of May 23, 2019, §§ 5.01, 5.04, 2019 Tex. Gen. Laws at 4035.

Amaya Perez contends that the trial court improperly imposed the $100 Child Abuse Prevention Fine because his offense was committed between 2018 and 2019, before the Legislature reclassified this cost as a fine, and therefore we should modify the judgment to strike this fine. The State agrees that the court erred by including the $100 Child Abuse Prevention Fine in the judgment and that we should modify the judgment to strike this fine. We agree. *See Rodriguez v. State*, — S.W.3d —, No. 01-23-00721-CR, 2025 WL 1373693, at *15–16 (Tex. App.—Houston [1st Dist.] May 13, 2025, pet. ref'd); *Baptiste v. State*, No. 01-23-00504-CR, 2025 WL

1298310, at \*4 (Tex. App.—Houston [1st Dist.] May 6, 2025) (mem. op., not designated for publication), *aff'd*, — S.W.3d —, No. PD-0449-25, 2026 WL 1593770 (Tex. Crim. App. June 4, 2026); *Brusco v. State*, No. 14-25-00030-CR, 2026 WL 472412, at \*4 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, no pet.) (mem. op., not designated for publication); *see also Fugett v. State*, 721 S.W.3d 120, 122 (Tex. App.—Amarillo 2025, no pet.) ("Because Appellant was not convicted until 2024, the legislative reclassification of the Child Abuse Prevention assessment of $100 from a 'cost' to a 'fine' applies."); *Rhodes v. State*, 712 S.W.3d 226, 235 (Tex. App.—Eastland 2025, no pet.) (same).

The State further argues that "the fine was not orally pronounced in [Amaya Perez's] presence, so [the fine] should be deleted on those grounds, as well." Fines are punitive in nature and are part of a defendant's sentence. *Anastassov v. State*, 664 S.W.3d 815, 820 (Tex. Crim. App. 2022). Unlike court costs, which are nonpunitive and compensatory in nature, fines generally must be orally pronounced in the defendant's presence at sentencing. *Armstrong v. State*, 340 S.W.3d 759, 766–67 (Tex. Crim. App. 2011); *McCarter*, 722 S.W.3d at 144. As a fine, the Child Abuse Prevention Fine must be included in the trial court's oral pronouncement of a defendant's sentence, and if it is not, the judgment should be modified to delete the fine. *Rodriguez*, 2025 WL 1373693, at \*15–16; *see Abad v. State*, 729 S.W.3d 108, 116–17 (Tex. App.—Houston [14th Dist.] 2025, no pet.); *Fugett*, 721 S.W.3d at 121,

122. Here, when the court orally pronounced Amaya Perez's sentence, it stated only that it was sentencing him to thirty-three years' confinement. It did not mention any fines. It was therefore improper for the trial court to include the Child Abuse Prevention Fine in the judgment.

We sustain Amaya Perez's third issue and modify the judgment of conviction to delete references to the $100 Child Abuse Prevention Fine.

### Conclusion

We modify the judgment of the trial court in two respects:

- On Page 1 of the judgment under "<u>Fines</u>," we delete the amount of $100.

- On Page 2 of the judgment under "<u>Fines Imposed Include</u>," we uncheck the box next to "Child Abuse Prevention Fine (Art. 102.0186, Code Crim. Proc.) **$100**."

We affirm the judgment as modified.


David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).

19